THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| MARINA ESPIRITU; FRANCISCO CONCEPCION MARQUEZ; DANTE VELEZ IRIARTE; IRIS DELIA TORRES LOPEZ<br><br>*Plaintiffs,*<br><br>v.<br><br>COMISION ESTATAL DE ELECCIONES (CEE) and JESSIKA D. PADILLA RIVERA, Alternate President, ANIBAL VEGA BORGES, Commissioner PNP; KARLA ANGLERO GONZALEZ, Commissioner PPD; LILLIAN APONTE DONES, Commissioner MVC; ROBERTO I. APONTE BERRIOS, Commissioner PIP; JUAN M. FRONTERA SUAU, Commissioner PD; COMMONWEALTH OF PUERTO RICO, Represented by Attorney General, Domingo Emanuelli Hernández.<br><br>*Defendants*. | Civil Action No. 24-cv-01446-MAJ<br><br>**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF** |

**AMENDED COMPLAINT**

TO THE HONORABLE COURT:

COME NOW the Plaintiffs through the undersigned attorneys and respectfully allege and pray:

## I.    INTRODUCTION

1.    Puerto Rico's current voter-registration policies, implemented under the Código Electoral de 2020 (the 2020 Election Code) Law No. 58-2020, 16 L.P.R.A. sec. 450, et seq, will disenfranchise thousands of eligible voters by leaving them out of the official lists of the *Comisión Estatal de Elecciones* (the Commission) in the run-up and on Election Day, in violation of Art.

5.11(2)(b) of the Code, and the fundamental right to vote protected by the First and Fourteenth Amendments to the United States Constitution.

2.      Art. 5.11(2)(b) of the Election Code restricts potential voters from registering any later than 30 days prior to Election Day, which is **November 5, 2024**.  By law, that makes **October 6, 2024** the registration deadline.  This deadline was even published by the Commission itself before it changed course by *ultra vires* Resolution on April 2023.

> "Artículo 5.11.- Fechas Límites para Transacciones Electorales. - … (2) Ciclo Electoral Cuatrienal de la Elección General 2024: (a) A partir de este ciclo, **no se autorizará la inscripción**, la reactivación, la transferencia y tampoco la reubicación de ningún Elector para la Elección General de 2024 y las sucesivas, **a partir de los treinta (30) días previos a esta**. (b) Se garantiza **el derecho absoluto del elector** a votar en el Precinto y la Unidad Electoral de su inscripción cuando el cambio de domicilio a otro Precinto o Unidad Electoral ocurra **dentro de los treinta (30) días anteriores a la Votación**."  (Emphasis added)

16 L.P.R.A. § 4571(2).

3.      Puerto Rico adopted an electronic registration system in July 2022, but it did so with significant delay and lackluster implementation.  The campaign to promote the system began in August 2024.  The platform has rejected applications and refused documents, leaving more than 81,000 applicants still waiting for confirmation from the electronic system that they have been successfully registered.  The situation is worsened by electric power outbreaks at the *Juntas de Inscripción Permanentes* (JIPs)—where voters may register in person—and delays that marred voter registrations at the University of Puerto Rico.

4.      These restrictions are burdensome under any circumstances and have dramatically left eligible voters with no recourse to register in the lead-up to the 2024 general election.  Even during the coronavirus ("COVID-19") pandemic, Puerto Rico's registered voters were higher than the registration numbers as of Saturday, September 21, 2024, last day of registration established by the CEE.

5.      The above-mentioned situation has been made more onerous because recent changes in law have closed more than 80% of the JIPs, putting all the hopes on the availability of the strained electronic registration system (ERE).  After the 2020 Electoral Code Provisions, JIPs were starkly cut by 89% to 12 from the previous 110.

6.      Moreover, the CEE has explained that it lacks employees to properly implement the challenges of the 2020 legislation and make deadlines in the electoral calendar.

7.      It is the duty of the Government of Puerto Rico to provide all resources to the CEE in order to comply with its constitutional obligations and hold the elections on November 5, 2024 without unduly burdening citizens' right to vote.

8.      The backlog of registrations for this year is also the result of the lack of action by the CEE when it took the decision to withdraw from the last three (3) years calendars the visit to high schools to promote registration among young voters.  This is reflected in an end of mission report issued by the Interamerican Union of Electoral Organizations (Union Interamericana de Organismos Electorales, "UNIORE") regarding primary elections of 2024.  One of the UNIORE report's observations was precisely the absence of young voters in the process.[1]  See also letter of five members of **Congress of the United States**, dated September 25, 2024 addressed to the Department of Justice and the U.S Election Assistance Commission, where they emphasis the importance "*to note how the 2020 Electoral Code has severely impacted voters registration and participation (both in primaries and general elections) prompting allegations of disenfranchisement.*"

---

[1] Gloria Ruiz Kuilan, *Desde violación al voto secreto hasta escasez de funcionarios de colegio: grupo de observadores internacionales confirma fallas durante las primarias*, El Nuevo Día (Sept. 5, 2024), at https://search.app/Vmkkdb84SCDLomBLA.

9.      According to the CEE Calendar used as evidence during an administrative review proceeding before the Puerto Rico's Superior Court, Case No. SJ2024CV08617, the day set by the CEE to have the final list of registered voters is **October 11, 2024**.  This shows the unreasonable character of the measures taken by the CEE while limiting the registration date to 45 days rather than 30 days prior to the elections day, established by law.

10.     In sum, *without any protective measures, Plaintiffs and many in their same position will be forced to accept disenfranchisement*.  The Government of Puerto Rico has the obligation to allocate the necessary budget and personnel to the CEE to guarantee the right to vote.

11.     Plaintiffs' constitutional right to vote cannot be conditioned on the lack of organization or budget of the CEE to administer the election process.

12.     Plaintiffs therefore seek a temporary restraining order, preliminary and permanent injunctions, and a declaratory judgment permitting potential voters (defined, as the Legislative Assembly has) to benefit from Art. 5.11(2)(b) and allow the citizenship to register no later than **October 6**, **2024**; 30 days before the November 5, 2024 general election.

## II.    JURISDICTION AND VENUE

13.     The action arises under the First and Fourteenth Amendments to the U.S. Constitution and is brought under 42 U.S.C. § 1983 to seek injunctive and declaratory relief for violations of constitutional rights.  This Court therefore has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

14.     This Court has personal jurisdiction over Defendant Comisión Estatal de Elecciones (CEE), an authority and/or agency and/or a public or quasi-public corporation by virtue of the Enabling Act number 4 of December 23, 1977, as amended, with sufficient authority to sue and be sued.  The Commission is located in Puerto Rico.

15.     This Court has personal jurisdiction over Defendant Jessika Padilla Rivera, who is an elected or appointed government official and resides in Puerto Rico.  It also has personal jurisdiction over all the Commissioners of the political parties who are members of the CEE.

16.     This Court has personal jurisdiction over Defendant Commonwealth of Puerto Rico, represented by the Attorney General Domingo Emanuelli, with sufficient authority to sue and be sued, pursuant to 28 U.S.C. §§ 2201 and 2202 for all equity relief.

17.     Venue is proper in this District under 28 U.S.C. § 1391 because Defendants reside in this District and because the events and omissions giving rise to Plaintiffs' claims occurred in this District.

18.     This Court has authority to issue both declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

## III.   PARTIES

19.     MARINA ESPIRITU is a 70-year-old U.S. citizen, resident of San Juan, Puerto Rico who last voted in 2012.  She tried to reactivate her credentials to vote in the 2024 elections using the eRE system.  She received the help of a young person to help her in the process because she does not have a computer and does not know how to read or write.  The system established that there was no voter registration with the information that she provided, despite having an electoral card.  She was told that the only remedy was to go to a JIP.  However, Ms. Espiritu is limited in her mobility, uses a cane, does not have a car, and cannot wait long hours standing or sitting to register in a JIP.  Due to the CEE's lack of organization, the reduction of the JIPs, errors in the electronic system designed for the electronic registration of voters (eRE) and the arbitrary reduction of the deadline for voters' registration, she was unable to reactivate her registration before the current deadline. ***Exhibit 1.***

20.    VICTOR F. ALTIERI GARCIA, of voting age, San Juan resident, is a first time voter and tried to do the registration procedure using the registration electronic system (eRE) approximately two weeks ago. Victor created his account and made the registration application. The system gave him a message indicating that he had successfully submitted his registration petition.  On September 20, 2024 Victor verified his petition status and discovered a message indicating that his petition had been denied and that he could call to xxx-xx-xxxx.  Therefore Victor's right to vote has been jeopardized for the early closing of the registration date before October 6, 2024. *Exhibit 2*

21.    ALICIA VAZQUEZ FIGUEROA, of legal age, resident of San Juan, Puerto Rico, tried to reactivate as a voter in the eRE electronic system due to the reduction of the registration boards in Puerto Rico. Alicia could not submit her picture.  She tried to submit a second photograph but was not possible.  Alicia spend more than 3 hour trying to complete the reactivation process without success.  On September 13 she went to Plaza Las Americas in person to try to reactivate her status as an active voter.  Alicia arrived around 11:00 am.  The CEE employees arrived at 12:00 m.  Alicia got number 70 in the line.  She was processed at 5:00 p.m. because someone else ceded the turn to her due to a medical condition.  The CEE personnel gave her a document that indicates that she updated her voter information, but the document does not specifies if she was reactivated.  On September 18, 2024 Alicia received a notification from the electronic system stating that the petition was pending.  Nothing was said about her petition for reactivation.  The social security number in the message was wrong.  Therefore, Alicia's right to vote has been jeopardized by the lack of facilitation of the registration process and the closing of the voters' registration prior to October 6, 2021. *Exhibit 3.*

22.    IRIS DELIA TORRES LOPEZ, of legal age, born on February 3, 1987 resident of San Juan, during the past weeks tried to reactivate in the CEE.  Since she did not have her electoral

6

number, Iris saw on the eRE system page that she could call to request information.  Iris called the

contact number many times.  On some occasions it rang, and they did not answer, on other

occasions the call did not come out and on others the call dropped.  Iris called several times.

23.      On Friday, September 13, 2024, Ms. Torres López decided to leave her job and

visit Plaza Las Américas because she found out that there was a temporary Registration Board.

But when she arrived it was very full, and she had to leave to pick up her daughter after school.

Iris had already given up, but fortunately she saw a post on social media from a candidate who

said that one could go to any JIP.  Despite her work schedule and the fact that she is a single

mother, she planned to go after work to the Cataño Registration Board on September 21.  However,

a friend told her that she could contact the commissioners at the State Elections Commission

(CEE), and they could help her.  Ms. Torres López was able to talk to one of them and get her

election number.  With this information she decided to use the eRE system to reactivate herself as

a voter and change her address.

24.      The process Ms. Torres López was forced to follow to ensure her registration was

very difficult and has not yet resulted in her successful registration.  First, it didn't allow her to

enter her correct address, since the system suggested addresses and doesn't allow you to enter

anything else.  So she had to choose the most similar one to be able to follow the process. When

Iris finally finished that part, she uploaded identification documents, her passport and bill with

address.  However, it took the system more than two hours to upload the documents.  Even then,

the system only notified her approval was "pending."  So Iris is faced with the uncertainty of

whether her entire registration will be approved and will be able to exercise her right to vote on

November 5. ***Exhibit 4.***

25. The obstacles for registration adopted under the New Election Code of 2020 and the closing of the voters registration before October 6, 2024 have affected the ability to register of the Plaintiffs *and others similarly situated*.

26. Defendant Comisión Estatal de Elecciones ("the Commission" or CEE) is the government agency that oversees and manages elections in Puerto Rico. The Commission is tasked with guaranteeing the right to all voters to exercise their vote in a democratic electoral process.

27. Defendant JESSIKA PADILLA RIVERA is the current President of the Commission.

28. Defendant ANIBAL VEGA BORGES, is the current Commissioner of the *Partido Nuevo Progresista* (PNP);

29. Defendant KARLA ANGLERO GONZALEZ, is the current Commissioner of the *Partido Popular Democrático* (PPD);

30. Defendant LILLIAN APONTE DONES, is the current Commissioner of the *Movimiento Victoria Ciudadana* (MVC);

31. Defendant ROBERTO I. APONTE BERRIOS, is the current Commissioner of the *Partido Independentista Puertorriqueño* (PIP);

32. Defendant JUAN M. FRONTERA SUAU, is the current Commissioner of the *Proyecto Dignidad* (PD);

33. Defendant Domingo Emanuelli Hernández is the current Attorney General of the Commonwealth of Puerto Rico.

## IV.   STATEMENT OF FACTS

34.   Going into this year's general election, Puerto Rico faces the lowest first-time voter registration figures in its electoral history.  The vast majority of first-time registrations correspond to young voters.

35.   In the run-up to the 2020 elections 121,358 new voters registered.  However, the CEE registered only 58,943 new voters as of September 3, 2024[2]  **As of September 21, 2024 at 10:00 am, only 69,992 first time voters were able to register showing a 43% decrease in new registrations**.

36.   Likewise, there has been a substantial reduction in voter <u>reactivations</u> in comparison with last election cycle.  In 2020, the CEE approved 78,085 reactivations, while that number reaches only 63,187 as of today, 14,898 less than the prior cycle.  See CEE OSIPE Certification attached as *Exhibit 5.*

37.   This reduction in young voter registration responds not only to the wording of the 2020 Electoral Code[3] (the 2020 Code), but also its implementation by the current administration of the Commission (CEE).[4]

### A.   FACTS RELATED TO THE WORDING OF THE 2020 CODE

38.   On June 20th 2020, at less than 6 months of the election and in spite of wide spread objection, the Government of Puerto Rico approved a new code with substantial changes to the electoral system.

39.   The afore-mentioned 2020 Code included several amendments that severely limited the participation of first-time voters in future elections while increasing the burden on voters who

---

[2] https://periodismoinvestigativo.com/2024/09/voter-registration-puerto-rico-elections-youth/

[3] Law 58 of June 20th 2020, as amended.

[4] https://www.elnuevodia.com/opinion/punto-de-vista/la-supresion-del-voto-joven/

had not voted in previous elections to reactivate their electoral status.  This last category includes

senior citizens looking for reactivation and/or change of address.

40.    Among others, some obstacles confronted during the registration process are the

following:

a.    Eliminated the CEE obligation to send personnel to high schools and colleges to register first time voters during the 4 years prior to the election. This mechanism had been in place since 1983 and was supported by all parties.

b.    Reduced the number of physical offices where public could physically attend to register from 110 to 12.[5]

c.    Eliminated the CEE institutional balance between the governing and opposition parties concentrating most financial resources, employee appointments and decision making power in the President of the CEE.

### B.    FACTS RELATED TO THE IMPLEMETATION OF THE CODE

41.    The decisions and implementation of the 2020 Code policies have resulted in the

severe reduction of voters registration for the upcoming 2024 election, when compared to prior

election cycle.

42.    Negligence in the implementation of the code has also made it unduly burdensome

to make simple changes in electoral status such as reactivations, information correction, and

address updates.

43.    The following circumstances attributable to the CEE and/or the Government of

Puerto Rico have been key in obstructing new voter registration and electoral status updates:

a.  Faulty and delayed implementation of the Electronic Voting Register (eRE)

b.  Delayed and insufficient education on voter registration and the requirements

c.  Lack of personnel and resources at Permanent and Temporary Registration Boards (JIP and JIT), as well as to in person registration events.

---

[5]https://www.ayudalegalpuertorico.org/2024/03/20/las-elecciones-y-la-improvisacion-con-las-juntas-de-inscripcion-permanente/

d.  Constant black outs in the CEE headquarters and the registration board locations.

    e.  **The reduction of the term established by law to register in violation of Article 5.11(2)(a)(b) of the 2020 Code**.

44.      All of these incidents have been documented extensively on a daily basis by media, but of particular impact to young voters has been the delay and failure of the implementation of eRE, affecting not only people present in Puerto Rico but also other voters traveling in the United States or other countries.

    **C.**       **FACTS RELATED TO THE REDUCTION OF THE DEADLINE FOR VOTERS' REGISTRY WHILE THE ELECTRONIC SYSTEM FAILS TO PROPERLY FUNCTION**

45.      The 2020 Code mandates that the voter registry close 30 days prior to the election date.  In this case it would be on October 6, 2024.  The CEE announced this closing date to prospective voters through social media.

46.      Until April of 2023, the Electoral Cycle Calendar contemplated the closing date for Registration to October 6, 2024.

47.      It was not until April 12, 2023, that the CEE discussed in an Ordinary Meeting a proposal to change the date for the closing of the Voter Registry. The motion proposed to reduce the term to register from October 6, 2024 to September 21, 2024.

48.      The CEE President granted the petition to change the closing date for registration from October 6 to September 21 over the objections of at least two CEE Commissioners from minority parties.  This change of date controversy was included in the Certification of Disagreement of April 19, 2023 (CEE-AC-23-081).

49.      As a consequence, the CEE issued the Resolution of May 1,2023 (CEE-RS-23-005) modifying the Electoral Calendar and changing the closing date for Registration.

50.     Unsatisfied with the determination to reduce the registration term, a CEE Commissioner presented a filing for Reconsideration on May 11, 2023.  The Reconsideration was declined by the CEE President on May 17, 2023.  (Resolution CEE-RS-23-008)

51.     At the same time, the eRE and the State Integrated Services Center for Voters (hereinafter, CESI) were supposed to be implemented in **July 2022**.  From the start, neither of the platform or center were functioning at the date they were supposed to. At this present time, the CESI is still not working as the Electoral Code design and ordered.

52.     A limited marketing campaign to promote electronic registration began in late **August 2024**.  The same merely mentioned it and failed to mention the burdensome requisites and multiple glitches of the eRE platform which made the registration through the system virtually impossible for most users.[6]

53.     In the months prior to the premature closing of the Electoral Registry, the voter registration process has been one characterized by serious difficulties for voters highlighted by long lines, lack of personnel, failures in the electronic registration system, its late implementation and limitations on access to electoral transactions.

54.     At moment there are some 81,000 new registrations, reactivations or update transactions carried out in the Electronic Voter Registry (eRE) pending review and approval.

55.     With the negative impact by the closing of the Registry, the malfunction of the eRE System and the upcoming difficulties that affects the citizens in their electoral transactions, a Request for the Extension of Terms was filed and supported by three Electoral Commissioners. On September 15, 2024, a communication was sent to Jessika Padilla Ruiz, Alternate President, requesting for the extension of the electoral registration period, according to the Law.

---

[6] See Id.1

56.    The petitions of extensions for the electoral registration period were attended in the Extraordinary Meeting of the Commission on September 16, 2024. During the discussion, there were controversies.  As a consequence, the Alternate President, Jessika Padilla Ruiz, didn't accept the request and issued the Certification of Disagreement (CEE-AC-24-103). Once the disagreement was expressed, the President issued the Resolution holding September 21, 2024 as the closing date of the Electoral Registry, which is hereby constitutionally challenged.

57.    In the Resolution, the President of the CEE alleges as the rationale that "[e]stablishing the closing of the electoral registry within thirty (30) days prior to the event places the preparation of the entire event at high risk electoral scaffolding necessary to hold the General Elections on time on November 5, 2024."

58.    Dissatisfied, on September 18, 2024, an Appeal for Electoral Judicial Review and a Declaratory Judgment was filed in the Superior Court of Puerto Rico, Case No. SJ2024CV08617.

59.    The Electoral Commissioners of opposing three political parties joined in support of the appeal.

60.    More importantly, during the September 18, 2024 hearing, the CEE made the following admissions in open court: According to the CEE Calendar used as evidence during an argumentative hearing before the Puerto Rico's Superior Court, the day set by the CEE to have the final list of registered voters was **October 11, 2024**.  In addition, the CEE alleged that the Calendar has an **error margin of 1 to 3 days.**  The CEE also mentioned that from the registration deadline they calculated that in **9 days**, their personnel could have the lists of registered voters with their Id pictures ready. If this Court grants an extension of time for registration, according to the Code, until October 6, 2024, it means that the list of registered voters will be ready on **October 15, 2024**. If we add the three days of margin of error to the Date previously chosen by the CEE itself (**Oct. 11**) we come to the conclusion that for **October 14, 2024** the CEE can complete all the lists of the

registered voters.  This only departs from the calculation date (**Oct. 15**) for one day.  This shows

the unreasonable character of the measures taken by the CEE while limiting the registration date

to 45 days rather than the 30 days established by law.

61.    In September 21, 2024, last day of registration, from 2,594 petitions, 1,033 were

rejected by the eRE system. Approximately 1 of 2 transactions were rejected by the eRE system.

## V.    VOTING POLICIES IN PUERTO RICO

62.    Voting in Puerto Rico is governed by the Código Electoral de Puerto Rico

("Election Code"), which is passed by the Legislative Assembly and signed into law by the

governor.  The Election Code is a comprehensive set of rules that aims to facilitate voters' access

to the polls, guarantee Puerto Ricans' right to vote and modernize the voting process.  Pursuant to

the Election Code, the Commission oversees the organization and oversight of elections in Puerto

Rico and is tasked with issuing the rules for each election.  Prior to June 20, 2020, when the

Governor signed into law Election Code 2020, the Election Code had not been updated since 2011.

63.    The Election Code of 2020 provides statutory standing for all qualified voters in

the jurisdiction of the Commonwealth of Puerto Rico.  See 16 L.P.R.A. sec. 450, *et seq*, Art. 5.1:

"Se concede a los electores la legitimación activa para iniciar o promover cualesquiera acciones

legales al amparo de este Artículo ante el Tribunal de Primera Instancia que corresponda de

conformidad con el Capítulo XIII de esta Ley."[7]

64.    Art. 3.1 of the Electoral Code states the mission of the CEE: "Garantizar que los

servicios, procesos y eventos electorales se planifiquen, organicen y realicen con pureza,

transparencia, seguridad, certeza, rapidez, accesibilidad y facilidad para que los electores de

---

[7]    Thus, voters are hereby granted the legal standing to initiate or bring any legal actions, pursuant to this section, before the appropriate Court of First Instance, as provided in §§ 4841-4846 of this title. (See official translation, **Exhibit 6.**)

manera costo-eficiente, libre de fraude y coacción; y sin inclinación a ningún grupo o sector ni

tendencia ideológica o partidista."[8]

       65.      Pursuant to Art. 5.11(2)(a)(b):

(a) A partir de este ciclo, **no se autorizará la inscripción**, la reactivación, la transferencia y tampoco la reubicación de ningún Elector para la Elección General de 2024 y las sucesivas, **a partir de los treinta (30) días previos a esta**. (b) Se garantiza **el derecho absoluto del elector** a votar en el Precinto y la Unidad Electoral de su inscripción cuando el cambio de domicilio a otro Precinto o Unidad Electoral ocurra **dentro de los treinta (30) días anteriores a la Votación**." (Emphasis added)[9]

Puerto Rico's Voting Policies, as adopted by the President of the CEE, undermine the Right to

Vote. *See Fla. Democratic Party v. Scott*, 215 F. Supp. 3d 1250, 1257 (N.D. Fla. 2016) (holding

that, because a hurricane "foreclosed the only methods of registering to vote" in the final week of

registration, the statutory deadline "severe[ly] burden[ed] on the right to vote"); *Ga. Coal. for the

Peoples' Agenda, Inc. v. Deal*, 214 F. Supp. 3d 1344, 1345-46 (S.D. Ga. 2016) (similar); Order,

*New Va. Majority Educ. Fund v. Va. Dep't of Elections*, No. 16-cv-01319, Dkt. No. 10 (E.D. Va.

Oct. 20, 2016) (extending registration deadline after the state's website crashed).

## VI.    DEFENDANTS' INTERESTS DO NOT JUSTIFY THE ALTERATION OF THE REGISTRATION DEADLINE

      66.      Defendants do not have a compelling interest in maintaining the existing

registration restrictions during these elections.  As such, these restrictions are unnecessarily

---

[8]  (1) Mission. - To ensure purity, transparency, security, certainty, swiftness, accessibility, and ease for the voters in a cost-efficient manner, free of fraud and coercion in the planning, organization and holding of election services, processes, and events and without bias towards any group or sector, or ideological or party trend. (See official translation, Ex. 6)

[9]  (2) Four-year Election Cycle of the 2024 General Election. -

    (a) As of this cycle, no registration, reactivation, transfer, or relocation of a voter for the 2024 General Election, or successive elections, shall be authorized within thirty (30) days before such election.

    (b) The absolute right of a voter to vote in the precinct and electoral unit where he is registered is hereby guaranteed if he changes his domicile to another precinct or electoral unit within thirty (30) days before the voting event. (See official translation, Ex. 6)

burdensome for Puerto Rico's voters.  The Government has less restrictive measures to remedy this constitutional dilemma.

67.     Defendants cannot have an interest in maintaining these voting restrictions for the general election.  In **Belia Ocasio v. CEE, et als**., No. 3:20-cv-01432 (PAD) this court issued a preliminary injunction under analogous circumstances at only three days of the closing date to request voting by mail.

68.     In **Belia Ocasio, supra,** this Court issued an Order on September 11, 2020 to allow senior citizens of 60 years old or more to vote by mail. (something not contemplated in the Code) The deadline to request vote by mail was September 14, 2020.  And the Court, not only extended for 10 days (until September 24) the deadline to request vote by mail but also instructed the CEE of its obligation to initiate an educational campaign in this regard.

69.     None of the anticipated administrative burdens above mentioned justify the deprivation of Puerto Rico's voters constitutional right to vote in the general election.  *See **Dunn v. Blumstein**, 405 US 330* (Strict Scrutiny: In enacting durational voting requirements, petitioner failed to use the least drastic means to achieve its purpose.  Outcome**:** Affirmed.)

70.     Unfortunately, the Commission has failed to take *any* action to ensure that Puerto Rico's voters can register and exercise their constitutional right to vote according to the Election Code of 2020.  The administration of the CEE has been negligent in the implementation of the 2020 Election Code due to lack of organization and resources, that the Commonwealth has the constitutional duty to provide.

## VII.   CAUSE OF ACTION

### UNDUE BURDEN ON THE RIGHT TO VOTE IN VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION

71.     Plaintiffs repeat and re-allege each and every allegation contained in Paragraphs 1 to 65, as if fully set forth herein.

72.     42 U.S.C. § provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. . . .

73.     Defendants' actions described herein were taken under color of the laws of Puerto Rico.

74.     The First and Fourteenth Amendments of the U.S. Constitution protect the right to vote as a fundamental right.  The First Amendment's guarantees of freedom of speech and association protect the right to vote and to participate in the political process.  The right to vote is a fundamental constitutional right also protected by both the due process and equal protection clauses of the Fourteenth Amendment.  *See, e.g.*, *Bush v. Gore*, 531 U.S. 98, 104-05 (2000); *Harper v. Va. State Bd. of Elections*, 383 U.S. 663, 670 (1996); *Anderson v. Celebrezze*, 460 U.S. 780, 786-87 (1983).

75.     The "voting rights of Puerto Rico citizens are constitutionally protected to the same extent as those of all other citizens of the United States." *Rodriguez v. Popular Democratic Party*, 457 U.S. 1, 8 (1982).

76.     The constitutional right to vote "is of the most fundamental significance under our constitutional structure." *Burdick v. Takushi*, 504 U.S. 428, 433 (1992).  When analyzing the constitutionality of a restriction on voting, the Court must "weigh the 'character and magnitude of the asserted injury to' the voters' rights against the 'precise interests put forward by the State as justifications for the burden imposed.'" *Common Cause R.I. v. Gorbea*, 970 F.3d 11, 14 (1st Cir. 2020) (quoting *Celebrezze*, 460 U.S. at 789).

17

77.    In light of the text of the Electoral Code, Art. 5.11(2)(a)(b), Puerto Rico's voting policies and restrictions, as applied to the November 2024 general election, constitute a severe burden on the right to vote.  These requirements will likely prevent thousands of voters from casting ballots during the general election because of the negligent administration of the CEE and its failure to efficiently implement the Election Code of 2020 jeopardizing the rights of thousands of voters.

78.    Refusal to extend the voter registration deadline in Puerto Rico imposes a severe burden on the fundamental right to vote by depriving citizens of that right altogether.

79.    The decision not to extend the deadline is not narrowly drawn to advance any state interest sufficiently compelling to justify the imposition of such severe burdens.

80.    Defendants have no justification for the burden imposed by their decision not to extend the deadline to October 6, 2024—which is the deadline that is actually prescribed by law.  No justification makes it necessary to burden Plaintiffs' rights.

81.    The burdens imposed on Defendants by their refusal to extend the voter registration deadline are not severe.  Defendants' failure to take action under these circumstances fail even rational basis review.

82.    Defendants' refusal to extend the voter registration deadline additionally violates the Equal Protection Clause because it irrationally and arbitrarily discriminates between Puerto Ricans based on the date within the lawful registration period on which they attempted to register to vote.

83.    Defendants' refusal to extend the voter registration period violates the Due Process Clause because it is fundamentally unfair to announce that prospective Puerto Rico voters could register to vote online through October 6, and then deny those same prospective Puerto Rico voters

84.

85.    the ability to register to vote through October 6.

86.    Plaintiffs therefore seek a declaratory judgment that, by refusing to extend the voter registration deadline in Puerto Rico, Defendants, acting under color of law, are depriving Plaintiffs of the rights, privileges, and immunities secured to them by the First and Fourteenth Amendments to the United States Constitution and protected under 42 U.S.C. §1983.

## VIII.  REQUEST FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that the Court:

1.    Enter a declaratory judgment that the Commission's failure to implement modern measures incorporated in the 2020 Election Code and its refusal to allow the extension of the registration deadline until October 6, 2024 for the general elections of November 5, 2024, violates Art. 5.11(2)(a)(b) of the Election Code and the First and Fourteenth Amendments of the United States Constitution;

2.    Issue temporary, preliminary, and permanent injunctions directing Defendants, their agents, employees, and successors, and all those persons acting in concert or participation with them to implement policies allowing citizens to safely register for the elections of November 5, 2024 until 30 days prior to the election date, which is October 6, 2024, by:

(a)    Extending the deadline for registration for the general elections until October 6, 2024;

(b)    Updating all public education materials, including written, online, and on-air, to reflect the above deadline extension;

(c)    Ordering the Commonwealth of Puerto Rico to allocate all necessary budget and personnel to guaranty the right to vote of the people of Puerto Rico on November 5, 2024.

(d)    Grant such other relief as the Court may deem just and proper.

19

Dated: September 26, 2024.

Respectfully submitted,

/S/Guillermo J. Ramos Luiña
GUILLERMO J. RAMOS LUIÑA
USDC-PR 204007
UPR Station, PO Box 22763
San Juan, PR 00931
Tel. (787) 620-0527
Fax (787) 620-0039
gramlui@yahoo.com

/S/ Fermín L. Arraiza Navas
FERMÍN L. ARRAIZA NAVAS
USDC-PR 215705
American Civil Liberties Union,
  Puerto Rico Chapter
farraiza@aclu.org
Tel. (787) 966-3133


Lolimar Escudero Rodríguez, Esq.*
PR SCt, RUA: 14,692
American Civil Liberties Union,
  Puerto Rico Chapter
LolimarER@aclu.org

Annette Martínez Orabona, Esq.
Executive Director
American Civil Liberties Union
  Puerto Rico Chapter
Union Plaza
416 Ponce de León Avenue, Suite 1105
San Juan, Puerto Rico 00918
Tel. (787) 753-9493
AMartinez-Orabona@aclu.org

*Of Counsel

Adriel I. Cepeda Derieux**
American Civil Liberties Union Foundation
915 15th St., NW
Washington, DC 20005
(202) 456-0800
acepedaderieux@aclu.org

Sophia Lin Lakin**
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
slakin@aclu.org

**Pro Hac Vice Application to be filed

20