**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **MARINA ESPÍRITU,** *et. al.*, <br><br> Plaintiffs, <br><br> v. <br><br> **COMISIÓN ESTATAL DE ELECCIONES,** *et. al.*, <br><br> Defendants | Civil No. 24-1446 (MAJ) |

**MOTION TO DISMISS PER RULE 12(B)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE[1]**

**COME NOW,** co-defendants Comisión Estatal de Elecciones ("CEE"), Hon. Jessika D. Padilla Rivera, in her official capacity as Alternate President of the CEE, and the Commonwealth of Puerto Rico, represented by Hon. Domingo Emanuelli Hernández as Secretary of Justice, and very respectfully STATE, ALLEGE, and PRAY as follows:

### I.    INTRODUCTION AND RELEVANT PROCEDURAL BACKGROUND

Relevant to the instant motion, on September 26, 2024, on the eve of the Preliminary Injunction Hearing set by the Court at Docket No. 18, Plaintiffs filed an Amended Complaint. (Docket No. 47). The Amended Complaint substituted two plaintiffs—Francisco Concepción Márquez and Dante Vélez Iriarte, for two new plaintiffs, Mr. Víctor F. Altieri García and Ms. Alicia Vázquez Figueroa, eliminating reference to original plaintiffs Concepción and Vélez.[2]

---

[1] As advanced at Docket No. 35 and granted by the Court on this date during the Preliminary Injunction Hearing held, Co-Defendants submit the present motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).

[2] Original plaintiffs Concepcion, Velez, and Iris Delia Torres López were able to successfully register and obtain approval through the eRE system. Likewise, new plaintiff Vázquez Figueroa was also able to successfully register and obtain approval through the eRE system.

Their allegations stem from perceived grievances related to their voter registration for the upcoming November 2024 general election, claiming First and Fourteenth Amendment violations under 42 U.S.C. Section 1983. (Docket No. 47).  Briefly, Plaintiffs claim their fundamental right to vote is restricted due to the allegedly burdensome limitation the deadline to register imposed by the CEE places, in direct contravention to Art. 5.11(2)(b) of the Electoral Code. Id.  In their request for relief, Plaintiffs moved for declaratory judgment that the CEE's failure to implement the 2020 Electoral Code and refusal to allow the extension of the registration deadline until October 6, 2024, violates Art. 5.11(2)(b) of the Election Code and the First and Fourteenth Amendments to the United States Constitution. Id. at 19. In addition, Plaintiffs sought a temporary, preliminary, and permanent injunction directing Defendants to implement policies to allow citizens to register for the general elections until thirty (30) days prior to the election date. Id

On September 27, 2024, this Honorable Court held a Preliminary Injunction Hearing, as set at Docket No. 18.[3]  Due to Plaintiffs Marina Espíritu, Alicia Vázquez Figueroa, and Iris Delia Torres López absence from the proceedings, Defendants moved the Court to dismiss their causes of action based on the principle of adverse inference, missing-witness inference or empty-chair doctrine. After hearing from the parties, the Court granted the request and dismissed co-plaintiffs Espíritu, Vázquez, and Torres's claims.  This motion to dismiss will address the only remaining plaintiff's allegations of the alleged burden imposed by the CEE in failing to implement the

---

[3] On September 27, 2024, the Court issued an Order denying Defendants' motion to strike argued during the Preliminary Injunction Hearing.  However, in order to afford Defendants adequate time to prepare for a trial on the merits, the Court ruled it would only hold the Preliminary Injunction Hearing and would set trial for a later date. It further held in abeyance the question of its jurisdiction. (Docket No. 50).

Electoral Code's October 6, 2024 deadline and timely inform citizens of the measures designed to ensure registration. (Docket No. 47).

Because Plaintiff Altieri failed to raise a claim upon which relief can be granted, appearing Co-Defendants move this Court for the dismissal of the amended complaint, with prejudice.

## II.    DEFENDANTS REITERATE DISMISSAL BASED ON THE FEDERAL POLICY OF NON-INTERVENTION IN LOCAL ELECTION DISPUTES

Plaintiff's Amended Complaint asks the Court to direct Defendants to implement policies for the registration for the general elections until thirty (30) days prior to the election date and to update educational material related to that extension. (Docket No. 47). In fact, Plaintiffs are requesting direct federal intervention in local state electoral proceedings. As such, this Court must abstain from exercising its jurisdiction to address local election disputes and must dismiss his complaint, with prejudice.

Federal courts are courts of limited jurisdiction, and therefore must be certain that they have explicit authority to decide a case. Bonas v. Town of North Smithfield, 265 F.3d 69, 73 (1st Cir. 2001) (citing Irving v. United States, 162 F.3d 154, 160 (1st Cir. 1998) (en banc)). "Thus, we subject the plaintiffs' choice of a federal forum to careful scrutiny." Rosselló-González v. Calderón-Serra, 398 F.3d 1, 15 (1st Cir. 2004). The Supreme Court of the United States has recognized that States retain the power to regulate their own elections. Sugarman v. Dougall, 413 U.S. 634, 647 (1973); Tashjian v. Republican Party of Connecticut, 479 U.S. 208 (1986). There must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic process. Storer v. Brown, 415 U.S. 724 (1974).

In Puerto Rico, the Constitution states that all matters concerning the electoral process, registration of voters, political parties, and candidates shall be determined by law. Puerto Rico

Const. Art. VI, Sec. 4. Pursuant to this constitutional mandate, the Puerto Rico Legislative Assembly passed the Puerto Rico Electoral Code of 2020 which regulates Puerto Rico's election system. P.R. Law Ann. tit. 16. § 4501, et seq.,

The U.S. Court of Appeals for the First Circuit ("First Circuit") has warned that a federal court "may not inject itself into the midst of every local electoral dispute." Bonas, 165 F.3d at 74. The appellate court has repeatedly stated that election law, as it pertains to state and local elections, is for the most part a preserve that lies within the exclusive competence of local courts and so only with a few narrow exceptions, federal courts are not authorized to meddle in local elections. Id. Federal courts normally may not undertake the resolution of "garden variety election irregularities." Griffin v. Burns, 570 F.2d 1065, 1076 (1st Cir. 1978). Cases that involve "tinkering with the state's election machinery, reviewing petitions, registration cards, vote tallies, and certificates of election for all manner of error and insufficiency" are within the exclusive cognizance of state courts. Id. at 1077.

The First Circuit has categorically held that "with only a few narrow and well-defined exceptions, **federal courts are not authorized to meddle in local elections**." Rosselló-González, 398 F.3d at 15 (emphasis added). That said, federal courts may only intervene in local election disputes when the complaint presents a colorable Section 1983 claim, and it falls within one of the exceptions to the general federal policy of non-intervention. Valentín-Pérez v. New Progressive Party, 857 F. Supp. 2d 214, 221 (D.P.R. 2012); see also Rosselló-González, 398 F.3d at 15-16 (finding that while the complaint presented a colorable claim under § 1983, the district court's exercise of jurisdiction was inappropriate because it ran contrary to the general rule of non-intervention in state electoral disputes). The two exceptions to the strong federal policy of non-intervention in local electoral matters are: when a discrete group of voters suffers a denial of equal

4

protection and when the election process itself reaches the point of "patent and fundamental unfairness." Id. Only when "the election process itself reaches the point of patent and fundamental unfairness" is federal intervention necessary. Bonas, 265 F.3d at 74 (citing Griffin, 570 F.2d at 1077). Total and complete disenfranchisement of the electorate as a whole is patently and fundamentally unfair. González-Cancel, 2021 WL 12949357, *4. However, "there is a heavy presumption in favor of non-intervention if the party requesting intervention cannot show that a discrete group of voters has been disenfranchised by the challenged local action." Rosselló-González, 398 F.3d at 16. As will be discussed below, none of the exceptions are present here.

In evaluating whether federal intervention into a local election dispute is appropriate, the Court must inquire into several critical factors such as: (i) whether a discrete group of voters has been disenfranchised; (ii) whether there is a state process in place to address the issues posed by the plaintiffs; and (iii) whether plaintiffs have availed themselves of that state process. Id. at 15-16. In this case, Plaintiffs are not disenfranchised, there are state processes in place for their registration, and three (3) of the four (4) plaintiffs availed themselves of those state processes for registration, currently pending for approval.

Here, Plaintiff failed to plead or demonstrate that he has been disenfranchised. He acknowledged that he registered online using the *e*RE system two weeks ago. (Docket No. 47, p. 6, ¶ 20).  He created his account and registered.  The system provided him with a notification stating he had successfully submitted his registration but claims that on September 20, 2024, before the deadline for voting registration elapsed, he verified his petition status and stated it had been denied.  Id. At the time co-plaintiff learned of this information, he was within the CEE's deadline to correct any notification pertaining to his registration.  His allegations do not reflect an inability to register but rather, that he was aware of the registration deadline and the availability of the *e*RE

system, used it successfully, and was within the September 21, 2024, deadline to correct any deficiency to ensure his registration.  His situation is not one of disenfranchisement or lack of knowledge of the deadline available ways to register.

Additionally, Co-Plaintiff would not benefit from an extension to the registration deadline because he already engaged with the digital registration format successfully. The September 21, 2024, deadline does not adversely affect him because he registered. Even when his application was rejected, he was still within the September 21, 2024, the CEE set for voter registration to correct any deficiencies.

Plaintiff Altieri had ample opportunity—over three years—to complete his registration or address any concerns. *See* Art. 2.3 of the Electoral Code, P.R. Laws Ann. § 4503, tit. 16, § 19 (providing the definition of Closing of Voters Registry). The CEE effectively communicated the deadline, ensuring that *all voters* had sufficient notice to participate in the upcoming November 2024 general elections.[4] Therefore, the requested extension of the Electoral Calendar would not substantively impact his circumstances.

As outlined in <u>Griffin</u>, federal courts typically refrain from meddling in local elections unless a clear case of disenfranchisement is established. 570 F.2d at 1076. Here, co-Plaintiff's assertions do not meet this threshold.  He had ample opportunity to register and knew of the deadline, effectively allowing sufficient time for all eligible voters to complete necessary transactions. In line with the strong federal policy of non-intervention, as reiterated in <u>Rosselló-González</u>, Co-Plaintiff failed to show how he constitutes a discrete group suffering from a denial

---

[4] As an example, see https://www.facebook.com/share/p/pDxGkW4s2e2DBXNF/, www.mivotopr.com, and El Nuevo Día (paper edition), September 20, 2024, p. 13.

of equal protection or that the electoral process has reached a point of patent and fundamental unfairness.

Given the absence of actual disenfranchisement and the robust state processes in place, this Court should adhere to the established principle of non-intervention and dismiss the amended complaint. Federal intervention is not warranted under these circumstances, as the state has adequately provided for the electoral needs of its citizens. Should the Court determine it has jurisdiction over the matter, then Co-Defendants move for the dismissal of the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6).

In addition, under the Purcell principle, this Court should not delve into Puerto Rico election rules, changing the same just short of five weeks to the 2024 General Elections. This, because doing so could confuse voters and create problems for officials administering the election. Purcell v. González, 549 U.S. 1 (2006) (reversing an October 2006 decision of the U.S. Court of Appeals for the 9th Circuit blocking an Arizona new voter identification requirement during a midterm election, and allowing the election to proceed without an injunction suspending the voter identification rules given the imminence of the election).

### III.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows for a defendant to seek dismissal of a complaint for failure to state a claim. Fed.R.Civ.P. 12(b)(6). To survive a motion under this rule, a complaint must allege a plausible entitlement to relief. Rodríguez-Vives v. Puerto Rico Firefighters Corps., 743 F.3d 278, 283 (1st Cir. 2014); Rodríguez-Reyes v. Molina–Rodríguez, 711 F.3d 49, 53 (1st Cir. 2013); Rodríguez-Ortiz v. Margo Caribe Inc., 490 F.3d 92, 95 (1st Cir. 2007). Plausibility requires "more than labels and conclusions." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Plausibility exists when the pleaded facts allow the court to reasonably infer

that the defendant is liable for the misconduct alleged. Morales-Cruz v. University of Puerto Rico, 676 F.3d 220, 224 (1st Cir. 2012); Sepúlveda-Villarini v. Department of Educ. of P.R., 628 F.3d 25, 30 (1st Cir. 2010). The complaint must be viewed as a whole, construing well-pleaded facts in the light most favorable to plaintiff, accepting their truth, and drawing all reasonable inferences in plaintiff's favor. Foley v. Wells Fargo, 772 F.3d 63, 68 (1st Cir. 2014); Reyes Ramos v. José Santiago, Inc., 2017 WL 2484176, at *1 (D.P.R. June 8, 2017). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft, 556 U.S. at 678 (2009).

The First Circuit Court of Appeals has mapped out a two-step methodology to properly analyze the plausibility of the claims as alleged in a complaint: first, isolate and ignore legal labels and conclusions or merely rehash cause-of-action elements, and second, take the complaint's well-pled facts as true, drawing all reasonable inferences in the pleader's favor, "and see if they plausibly narrate a claim for relief." Avilés v. Figueroa, 195 F. Supp. 3d 435, 443 (D.P.R. 2016); Schatz v. Republican State Leadership Committee, 669 F.3d 50, 55 (1st Cir. 2012)(citing Ocasio-Hernández, 640 F.3d at 12). As will be discussed, after setting aside Plaintiff's conclusory allegations and rehashed elements of a political discrimination claim, he still fails to set forth a plausibly entitlement to relief.

## IV.     ANALYSIS OF FIRST AND FOURTEENTH AMENDMENT VIOLATIONS

"We have repeatedly held that freedom of association is protected by the First Amendment. And of course, this freedom protected against federal encroachment by the First Amendment is entitled under the Fourteenth Amendment to the same protection from infringement by the States." Williams v. Rhodes, 393 U.S. 23, 30–31, 89 S. Ct. 5, 10, 21 L. Ed. 2d 24 (1968). In the same vein, "no right is more precious in a free country than that of having a voice in the election of those

who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined." Williams, supra, at p. 31.  Though the right to vote is fundamental to our system of democracy, it is well-settled that the right to vote in any manner is not absolute. Libertarian Party of New Hampshire v. Gardner, 759 F. Supp. 2d 215, 224 (D.N.H. 2010), aff'd, 638 F.3d 6 (1st Cir. 2011)(internal citations omitted).

As Plaintiff Altieri's allegations show, Art. 5.11 of the 2020 Electoral Code in no way constitutes a severe burden on his right to vote.  First, Co-Plaintiff was able to register online using the *e*RE system before the September 21, 2024, deadline.  (Docket No. 47 at 6, ¶ 20). The system informed him that he had registered successfully.  Id. On September 20, 2024, when he decided to verify the status of his petition, he learned that it had been denied because he failed to prove his identification and advised him of a number to call if he had any doubts.  Id. His claims do not allege a plausible entitlement to relief under the First and Fourteenth Amendments because the perceived violation – disenfranchisement – in reality is an inconformity with the result of the notification received.  The 2020 Electoral Code provided Plaintiff Altieri with the mechanism to successfully register to vote and to address the alleged burden is his dissatisfaction with the result. Even so, he learned of this notice before the September 21, 2024 deadline to register elapsed. Plaintiff was still on time to correct any deficiency.  Even accepting his allegations as true, Plaintiff's claims do not rise to a plausible claim for relief.  On this record, Co-Defendants move for the dismissal of the amended complaint with prejudice.

## V.    CONCLUSION

The CEE, responding to its constitutional mandate to guarantee the planning and execution of electoral events, has effectively implemented the dispositions included in the 2020 Electoral Code. Art. 2.3 of the Electoral Code, read in conjunction with the challenged Art. 5.11(2), restrict

the timeframe available for the conclusion of voter registration. Co-Defendants, correctly interpreting these local law dispositions, ratified the September 21, 2024 deadline for the conclusion of voter registration. For starters, this Court should apply the federal policy of non-intervention and dismiss the complaint. In addition, without waving any jurisdiction or threshold matter, Co-Plaintiff's claims of First and Fourteenth Amendment violations due to his interpretation of Art. 5.11, as restrictive or burdensome to his right to vote, does not hold water. Plaintiff was timely informed of the deficiency in his registration and chose not to take action to correct the same. Consequently, this Court should dismiss the amended complaint with prejudice for failure to state a claim.

**WHEREFORE**, Co-Defendants respectfully request this Court to take notice of the above and consequently, given the absence of actual disenfranchisement and the robust state processes in place, this Court should adhere to the established principle of non-intervention and dismiss the amended complaint. In the alternative, Co-Defendants request this Court to dismiss the amended complaint for failure to state a claim.

**I HEREBY CERTIFY** that I electronically filed the foregoing with the Clerk of the Court who will send notification of such filing to the parties subscribing to the CM/ECF system.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico on this 27th day of September 2024.

**DOMINGO EMANUELLI-HERNÁNDEZ**
Secretary of Justice

**SUSANA I. PEÑAGARÍCANO-BROWN**
Deputy Secretary in Charge of Civil Litigation

**JUAN C. RAMÍREZ-ORTIZ**
Deputy Undersecretary in Charge of Civil Litigation

*S/ Marcia I. Pérez Llavona*
**MARCIA I. PÉREZ LLAVONA**
USDC No. 223305
Email: marperez@justicia.pr.gov
Tel. (787) 721-2900; ext. 1416/1421

**DEPARTMENT OF JUSTICE
OF PUERTO RICO**
Federal Litigation Division
PO Box 9020192
San Juan Puerto Rico, 00902-0192