THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| MARINA ESPIRITU; VICTOR ALTIERI GARCIA<br><br>*Plaintiffs,*<br><br>v.<br><br>COMISION ESTATAL DE ELECCIONES (CEE) and JESSIKA D. PADILLA RIVERA, et als<br><br>*Defendants*. | Civil Action No. 24-cv-01446-MAJ<br><br>**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF** |

**OPPOSITION TO MOTION TO DISMISS**

TO THE HONORABLE COURT:

COME NOW the Plaintiffs through the undersigned attorneys and respectfully allege and pray:

On September 27, 2024 the Defendants filed a Motion to Dismiss (Dkt. 51)**,** in which, at footnote no. 4 , they request the Court to take into account matters outside of the pleadings, which would require the Court to treat their Motion as one for summary judgment. See Fed.R.Civ.P. 12(d). Accordingly, we are re-submitting Marina Espiritu's statement under penalty of perjury as well as additional statements of plaintiffs as testimonies that reflects the obstacles the citizenry face while using the eRE system, in support of our Opposition to Motion to Dismiss. See ***Exhibits 3 et seq.*** Plaintiffs also rely on the evidence that was received by the District Court during the *Preliminary Injunction* hearing, which must be considered when ruling on Defendants' summary judgment motion

Puerto Rico's current voter-registration policies, implemented under the Código Electoral de 2020 (the 2020 Election Code) Law No. 58-2020, 16 L.P.R.A. sec. 450, et seq, will disenfranchise thousands of eligible voters by leaving them out of the official lists of the *Comisión Estatal de Elecciones* (the Commission) in violation of the fundamental right to vote protected by the First and

Fourteenth Amendments to the United States Constitution. Plaintiffs herein reaffirmed that the Amended Complaint was filed as of right pursuant to Fed. R. Civ. P. Rule 15(a)(1).

Defendants assert that plaintiffs can only request a remedy for themselves and not for third parties. The hurdle defendants face is that plaintiffs did complain of restrictions on the voting rights for themselves and *others similarly situated*. **Class certification is unnecessary, as the nature of the right asserted – the right to vote – under the U.S. Constitution, necessarily requires that "any declaratory or injunctive relief run to all persons similarly situated."** Cromwell v. Kobach, 199 Fed.Supp.3d 1292, 1314-1315 (D. Kan. 2016) (articulating formulation in connection with challenge to a state voter registration requirement, noting that benefits of certification were minimal as compared to the burdens).[1]

After listening to the arguments of the parties, the Court held the PI hearing with the testimony of the only Plaintiff that was able to testify, Victor Altieri García, who appears for the first time in the Amended Complaint. No objection to his testimony was timely raised by any of the Defendants and they had plenty opportunity for cross-examination.

Due to the **continued** harm and burden of the restrictions imposed on registration, new plaintiffs must benefit from the original TRO and PI petition that the court allowed, ordering the PI hearing without the objection of the Defendants. (Dkt. 50) The Motion to Strike the Amended Complaint was correctly denied by the Court.

Plaintiffs herein incorporate by reference all statements of facts, arguments of law and exhibits included as part of the Complaint, Amended Complaint, Motion for TRO and Memorandum of Law in Support.

---

[1] It would present a serious equal protection issue if some voters were given relief by this court, but others who were similarly affected couldn't; Just by virtue of appearing in court. That's why there's no jurisdictional or prudential rule that bars this court from tailoring an injunction to remedy the conduct that is being challenged as unlawful. *Kobach*, supra.

**Background:**

Art. 5.11(2)(b) of the Election Code restricts potential voters from registering any later than 30 days prior to Election Day, which is **November 5, 2024**. By law, that makes **October 6, 2024** the registration deadline. This deadline complies with federal required standards for the States and was even published by the Commission itself before it changed course by *ultra vires* Resolution on April 2023. See 16 L.P.R.A. § 4571(2). (Certified Translation submitted).

Puerto Rico was required to put in place a registration system ("eRE") no later than July 1, 2022. Inexplicably, the eRE did not become operational until late October 2023 while the number of Permanent Inscription Boards was dramatically decreased since 2021. (See testimony of the Secretary of the CEE, Rolando Cuevas Colón, during yesterday's *Preliminary Injunction* hearing).

The platform has rejected applications and refused documents, leaving more than 80,000 applicants still waiting for confirmation from the electronic system that they have been successfully registered. Others have been rejected as the case of Víctor Altieri García. The situation is worsened by electric power outbreaks at the *Juntas de Inscripción Permanentes* (JIPs)—where voters may register in person—and delays that marred voter registrations at the University of Puerto Rico. This is of common knowledge and the court can take judicial notice pursuant to federal rules. (*See reference to the Puerto Rico news on this regard as an appendix to this motion*).

These restrictions are burdensome under any circumstances and have dramatically left eligible voters with no recourse to register in the lead-up to the 2024 general election. The above-mentioned situation has been made more onerous because recent changes in law have closed more than 80% of the permanent registration boards (JIPs). Even with the Temporary Registration Boards provided by the CEE, voters had less than 60% of the previously available registration boards to visit and do their registration. (See testimony of the Secretary of the CEE, Rolando Cuevas Colón, during yesterday's *Preliminary Injunction* hearing and documents admitted into evidence as exhibits.)

It is the duty of the Government of Puerto Rico to provide all resources to the CEE in order to comply with its constitutional obligations and hold the elections on November 5, 2024, without unduly burdening citizens' right to vote. See also letter of five members of **Congress of the United States**, dated September 25, 2024: "*to note how the 2020 Electoral Code has severely impacted voters registration and participation (both in primaries and general elections) prompting allegations of disenfranchisement.*"

During the PI hearing the Defendants did not present any witness nor a single piece of evidence to show an alleged compelling interest in shortening the registration date for the November 5, 2024 elections.

In sum, *without any protective measures, Plaintiffs and many in their same position will be forced to accept disenfranchisement*.

Defendants did not present any witness nor evidence of an alleged compelling state interest during the Preliminary Injunction Hearing.

**The Court should not dismiss this case based on the federal policy of non-intervention in local election disputes.**

The CEE Defendants make far too much of a so-called policy of "non-intervention." CEE Opp. at 3. To start, they rely on cases that asked federal courts to intimately "embroil" themselves "in the detailed administration of a local election." *Bonas v. Town of N. Smithfield*, 265 F.3d 69, 75-76 (1st Cir. 2001). In *Rossello-Gonzalez v. Calderon-Serra*, for example, plaintiffs asked the district court to determine the "validity of certain ballots cast" in a completed election. 398 F.3d 1, 5 (1st Cir. 2004). And in *Valentin-Perez v. New Progressive Party*, plaintiffs tasked the district court with nothing less than deciding whether a candidate should feature in a local race's primary. 857 F. Supp. 2d 214, 216 (D.P.R. 2012). Put another way, they asked courts to "tinker[] with the state's election machinery." *Bonas*, 265 F.3d at 75.

That is not what Plaintiffs ask here: yes, federal courts must be careful in matters concerning elections, but the First Circuit teaches that this "authority to regulate elections is not unfettered." *Werme v. Merrill*, 84 F.3d 479, 483 (1st Cir. 1996). Defendants "cannot wield their regulatory power in ways that contravene the First and Fourteenth Amendment rights of their citizens." *Id.* So their claim that this Court may not safeguard voters' rights just proves too much. "Th[e] Constitution is not so toothless." *Gallagher v. N.Y. State Bd. of Elections*, 477 F. Supp. 3d 19, 45 (S.D.N.Y. 2020).

The claims that Plaintiffs raise are only new in that they ask the Court to apply the relevant constitutional framework to Puerto Rico's current state of affairs. In fact, several courts have recognized that registration deadlines, when combined with intervening events like those that Puerto Rico has lived through in recent weeks, can impose an undue burden on voters that the First and Fourteenth Amendments can remedy. That is true, in fact, even when defendants have little or no control over those events.

Take a crashed website, for example. In *New Virginia Majority Education Fund v. Virginia*, a federal court ruled that Virginia had to find a way to allow eligible voters an additional two days to register when the state's registration website crashed, preventing thousands of voters to register in the last two days before the cutoff. 16-cv-01319, ECF No. 10 (E.D. Va. Oct. 20, 2016). Given the circumstances the website's crash put eligible voters in, the court ordered defendants to "take all action necessary to reopen and extend" the deadline to make up the lost time. *Id.*

The same has held true with natural disasters. There, courts found that even if registration deadlines *by themselves* were not unduly burdensome, they could certainly become so in the face of outside events that limit voters' ability to register. In *Florida Democratic Party v. Scott*—in the wake of a hurricane that hit five days before a registration deadline—the court found that the state's deadline had to yield to would-be voters' rights. 215 F. Supp. 3d 1250 (N.D. Fla. 2016). Because the state's statutes had "no provision that extend[ed] the voter registration deadline in the event of an emergency,"

5

the court reasoned that it "***completely disenfranchise[d]*** thousands of voters, and amount[ed] to a severe burden on the right to vote." *Id.* at 1257 (emphasis added). Another court in Chatham County, Georgia, faced with the same fact pattern, also did the same. *See Georgia Coal. For the Peoples' Agenda v. Deal*, 214 F. Supp. 3d 1344, 1345 (S.D. Ga. 2016) (extending deadline in Georgia county by a week due to hurricane closures of registration boards).

The Testimony of the Secretary of the CEE confirmed what everybody know regarding BLACKOUTS, CLOSURE OF JIP'S, AND DELAYED IMPLEMENTATION OF THE WEBSITE.

Defendants' arguments wholly miss these points—they do not engage them at all. In their reading, the notion of "nonintervention" completely dissolves the federal courts' role to review whether states "plac[e] burdens on citizens' rights to vote that are not reasonably justified." *Common Cause R.I. v. Gorbea*, 970 F.3d 11, 14 (1st Cir. 2020). As the above cases make clear, that is simply wrong.

**Defendants wrongly invoke *Purcell*.[2]**

Lastly, Defendants are wrong to invoke the so-called *Purcell* principle. Mot. at 7. That line of cases does not bar relief in voting rights cases whenever plaintiffs seek injunctive relief near an election. *See, e.g.*, *Merrill v. Milligan*, 142 S. Ct. 879, 881 (2022) (Kavanaugh, J., concurring) (noting *Purcell* isn't "absolute" but a "refinement" of "stay principles for the election context). The *Purcell* cases speak to the possible confusion that may result when federal courts' intervention affects the "how, when and where voters may cast their ballots." *Democratic Nat'l Committee v. Wisconsin State Legislature*, 141 S. Ct. 28, 31 (2020) (Kavanaugh, J., concurring). It is *that* case of intervention that could result in an "incentive to remain away from the polls." *Purcell v. Gonzalez*, 549 U.S. 1, 4-5

---

[2] Justice Kavanaugh has spoken, in *Democratic National Committee v. Wisconsin State Legislature*, for example, about the "how, when and where voters may cast their ballots." 141 S. Ct. 28, 31 (2020). That's not at issue here. Not changing anything related to voting. We argue that the burdens on the Plaintiffs are severe. That's obvious when you look at Mr. Altieri and others in similarly situated. He tried to register electronically before the deadline expired. Was told he had successfully done so. Then later learned the opposite: his application had been denied. *IF NOT FOR THE DEADLINE*, he could cure whatever error denied his application. He cannot do that. He will be disenfranchised by this deadline.

6

(2006) (per curiam).  Of course, here, no voters would be confused or stay away from the polls if *additional eligible* voters like plaintiffs had a chance to register and cast their ballots.

**Defendants Padilla Rivera and the Commonwealth's notion of a "principle of intervention" goes too far.**

While federal courts must be careful in matters concerning elections, there is a robust body of law concerning the fundamental right to vote under constitutional law.  *See Werme v. Merrill*, 84 F.3d 479, 483 (1st Cir. 1996) ("Th[e] authority to regulate elections is not unfettered.  [S]tates cannot wield their regulatory power in ways that contravene the First and Fourteenth Amendment rights of their citizens.").

The First Circuit and its courts have applied it time and again.  For example, in the 2020 case of *Ocasio v. Comision Estatal de Elecciones*, which involved the same defendants.  There, a judge in this district held that the CEE's refusal to allow senior voters with a way to vote safely during the COVID pandemic violated their fundamental right to vote. "The Constitution is not so toothless" as the Southern District of New York said in a case extending a deadline using *Anderson-Burdick*. *Gallagher v. NY State Board*, 477 F. Supp. 3d 19 (S.D.N.Y. 2020).

**Plaintiffs' constitutional challenge is because the deadline *as combined* with a series of events have made it severely burdensome for plaintiffs and others similarly situated to register or reactivate their registrations.**

Take the very well-known blackouts that have plagued Puerto Rico and the registration process. It has been well-documented that this has affected the JIPs and registration.  That makes this case similar to several other challenges where courts have said that a state's lack of a way to extend a voter

registration deadline in the event of an emergency, act of god, or intervening event, for example—*even if outside the Defendants' control*—can impose an undue burden that must be remedy.[3]

**The burdens on plaintiffs and similarly situated eligible new voters is <u>severe</u>.**

Those are the kinds of burdens that court after court have found that registration deadlines—*when combined with circumstances like those that Puerto Rico has faced*—pose a *severe* burden to voters. In that case, the applicable standard is strict scrutiny, and the deadline must yield.

**Defendants' Interest in Administering the Elections.**

Even under a lesser form of scrutiny (which is a balancing test under *Anderson-Burdick*), the deadline should give way by adding more days to register. Defendants claim an interest in keeping to their schedule. That's certainly a strong—even compelling—interest. But it's not determinative. Defendants don't win the case on that; that's not the end of the inquiry. If it's strict scrutiny, Defendants musth show that the deadline is narrowly tailored to address that interest. It's not: Puerto Rico law says it's not, because the deadline can be two weeks after CEE set it. That alone means it's not the narrowest tailoring. Moreover, the testimony of the Secretary of the CEE was to the fact that the CEE can

---

[3] **-Crashed websites**: In *New Virginia Majority Education Fund v. Virginia*, the federal court ruled that Virginia had to find a way to allow eligible voters an additional two days to register because the state's registration website crashed, preventing thousands of voters to register in the two days before the registration deadline. **16-cv-01319, ECF No. 10, (ND Va Oct. 20, 2016).**
**-The COVID pandemic presented similar cases**: In *Mi Familia Vota v. Hobbs*, in Arizona, the state's deadline *combined with* COVID-19 conditions compelled that court to say that the state had to keep registration open for at least two weeks to comply with the constitution. **493 F. Supp. 3d 980 (D. Ariz. 2020)**; Same with *Democratic National Committee v. Bostelmann*, in Wisconsin, where the court ruled Wisconsin had to extend its deadline by a week. **488 F. Supp. 3d 776 (W.D. Wis. 2020)**; And *Gallagher v. NY State Board of Elections*, which extended New York's statutory deadline by at least a day. **477 F. Supp. 3d 19 (S.D.N.Y. 2020)**.
**-Hurricanes, too**: In *Florida Democratic Party v. Scott*, it was a hurricane that caused the problem. The Northern District of Florida found that the state's registration deadline had to yield to would-be voters' constitutional rights under *Anderson-Burdick*. That was because Florida law did not extend the voter deadline in the event of emergencies or contingencies, like a Hurricane, that foreclosed the only ways to register to vote in the immediate days before the deadline. **215 F. Supp. 3d 1250 (ND Fl 2016);** The same was true in *Georgia Coalition for the Peoples' Agenda v. Deal*, where the same fact pattern justified extending Georgia's deadline in at least one county: inclement weather had closed registration boards and "potentially prevented individuals from submitting their registration applications." **214 F. Supp. 3d 1344 (S.D. Ga. 2016).** That was enough—under *Anderson-Burdick*—for the district court to compel an injunction extending the registration deadline by a week.

<u>continue the registration by hand even until the same day of the election date.</u>  And if it's a balancing test, then the weight of the Plaintiffs' burdens far outweighs any benefit from keeping this deadline. ***Plaintiffs don't ask for anything Puerto Rico law doesn't already allow.***  Puerto Rico law allows for the deadline to be as late as October 6.  Defendants don't even try to explain why something the legislature has given them authority to do is now impossible.

### *Pennhurst* does not apply

Defendants completely ignore the *Ex Parte Young* doctrine:  officers can be sued in their official capacities for declaratory or injunctive relief.  *Reed v. Goertz*, 598 U.S. 230, 234 (2023).  That's black letter law.  A Northern District of Florida case applies with full force here:  "*Pennhurst's* holding concerns the Eleventh Amendment bar on federal courts' jurisdiction over state law claims is not absolute.  *What Pennhurst unequivocally doesn't prevent is exactly what Plaintiffs are doing here—* seeking relief for a violation of federal constitutional law."  *Florida NAACP v. Byrd*, 680 F. Supp. 3d 1291 (N.D. Fla. 2023).  Defendants say a 1983 "claim must allege a violation of a federal constitutional or statutory right": Plaintiffs *do allege a violation of their First and Fourteenth Amendment rights*. *Pennhurst* simply has nothing to do with this case.

**Lastly, Defendants' effort to limit any relief ignores that "the nature of the right asserted – the right to vote – under the U.S. Constitution, requires that any declaratory or injunctive relief run to all persons similarly situated."**

This court in ***Belia Ocasio v. CEE***, four years ago.  486 F. Supp. 3d 478, 486 (D.P.R. 2020), ruled on this issue extending the remedy to others similarly situated. This court issued a preliminary injunction under analogous circumstances at only three days of the closing date to request voting by mail.  The Court issued an <u>Order</u> on September 11, 2020 to allow senior citizens to vote by mail. (something not contemplated in the Code) The deadline to request vote by mail was September 14,

9

2020.  And the Court, not only extended for 10 days (until September 24) the deadline to request vote by mail but also instructed the CEE of its obligation to initiate an educational campaign in this regard.

This is a well-settled notion, that again Defendants ignore.  There is no jurisdictional or prudential bar to ordering a defendant to cease unlawful activity, even when that order benefits non-parties who are also in harm's way.  Courts frequently do just that, whether or not a class action has been certified, because the nature of the rights at issue "requires that the decree run to the benefit not only of [plaintiffs] but also for all persons similarly situated.  *Bailey v. Patterson.*, 323 F.2d 201, 206. See *Perry v. Schwarzenegger*, 704 F. Supp. 2d 921, 1004 (N.D. Cal. 2010) (enjoining state officials from enforcing California's Proposition 8, which banned same-sex marriage, when only individual plaintiffs before the court)**;** *Ball v. Brown*, 450 F. Supp. 4, 10 (N.D. Ohio 1977) (finding class action unnecessary, and voiding Ohio law which infringed on the right to vote for those who did not adopt their husband's surname)

**INJURIES AND IRREPARABLE HARM TO PLAINTIFFS**

MARINA ESPIRITU is a 70-year-old U.S. citizen, resident of San Juan, Puerto Rico who last voted in 2012.  She tried to reactivate her credentials to vote in the 2024 elections using the eRE system.  She received the help of a young person to help her in the process because she does not have a computer and does not know how to read or write.  The system established that there was no voter registration with the information that she provided, despite having an electoral card. She was told that the only remedy was to go to a JIP.  However, Ms. Espiritu is limited in her mobility, uses a cane, does not have a car, and cannot wait long hours standing or sitting to register in a JIP.  Due to the CEE's lack of organization, the reduction of the JIPs, errors in the electronic system designed for the electronic registration of voters (eRE) and the arbitrary reduction of the deadline for voters' registration, she was unable to reactivate her registration before the current deadline. ***Exhibit 1***

VICTOR F. ALTIERI GARCIA, of voting age, San Juan resident, is a first time voter and tried to do the registration procedure using the registration electronic system (eRE) approximately two weeks ago. Victor created his account and made the registration application. The system gave him a message indicating that he had successfully submitted his registration petition.  On September 20, 2024 Victor verified his petition status and discovered a message indicating that his petition had been denied and that he could call to xxx-xx-xxxx.  Therefore Victor's right to vote has been jeopardized for the early closing of the registration date before October 6, 2024*.* ***Exhibit 2***

The obstacles for registration adopted under the New Election Code of 2020 and the closing of the voters registration before October 6, 2024 have affected the ability to register of the Plaintiffs *and others similarly situated*. (See the rest of ***Exhibits*** to the Complaint, Amended Complaint, Motion for TRO and Memorandum of Law in Support filed in this same case.)

The administration of the electoral process threaten to provoke a massive disenfranchisement in the upcoming general elections, something this Court could easily remedy. The violation of the right to vote itself, as an important component of the Right to Speech is an irreparable harm in itself.

**ARGUMENT**

    **Legal Standards for the Preliminary Injunction**

A preliminary injunction is appropriate where a court finds (1) a substantial likelihood of success on the merits; (2) a significant risk of irreparable harm in the absence of the injunction; (3) that the balance of hardships weighs in the movants' favor; and (4) that granting the injunction will not harm the public interest. *I.P. Lund Trading AS* v. *Kohler Co.*, 163 F.3d 27, 33 (1st Cir. 1998). Plaintiffs need not establish a certainty of success, but they must show a "strong likelihood that [they] will ultimately prevail." *Sindicato Puertorriqueño de Trabajadores* v. *Fortuño*, 699 F.3d 1, 10 (1st Cir. 2012) (quoting *Respect Me. PAC* v. *McKee*, 622 F.3d 13, 15 (1st Cir. 2010)). "Significantly, the abovementioned quadripartite standard is the same test that is to be used in determining whether to grant a temporary restraining order*." Largess v. Supreme Jud. Ct. for State of Massachusetts*, 317 F. Supp. 2d 77, 81 (D. Mass.), aff'd, 373 F.3d 219 (1st Cir. 2004). Here, Plaintiffs meet all four prongs of this test. See additional case law in the Motion for TRO and its exhibits (Dkt. 10).

**Plaintiffs are likely to prevail on the merits of their constitutional claims.**

Plaintiffs are highly likely to succeed on the merits of their claims because, given the current disorganization of the CEE and lack of implementation of the new policies adopted by the 2020 Election Code, are depriving Plaintiffs of their ability to vote. Because the burden placed on Plaintiffs,

and other citizens, is severe, the Court should apply heightened, if not strict, scrutiny. *See Fusaro* v. *Cogan*, 930 F.3d 241, 257 (4th Cir. 2019) (noting that a "'severe' restriction of [First and Fourteenth Amendment] rights triggers strict scrutiny"). Even assuming that the Court finds that *Anderson-Burdick*'s "balancing" approach requires something less than strict scrutiny, however, Puerto Rico's failure or refusal to implement expanded exceptions to its voting limitations on registration date is not justified by a compelling or legitimate state interest and should therefore be found unconstitutionally burdensome in light of the non-compliance with other alternatives for registration and the elimination of all wide approach the CEE had under previous Election Codes to promote the participation of the youth in the general elections. The Commission's failure to meaningfully and timely implement the dispositions of the electronic registry for our citizens significantly burdens their fundamental right to vote, creating an enormous obstacle to the registration process. Without these measures, herein requested, thousands of Puerto Ricans and voters qualified to vote in Puerto Rico will stay excluded from the official voters' list of the CEE.

The breadth of the impact of the Commission's failure to implement the law, the Code's established deadline on October 6, and the mechanisms to facilitate registration is extensive. If we compare the number of new voters registered by September 21, 2024 (69,992 voters) versus the number of newly registered voters in 2020 (121,358 voters) the math speaks by itself notwithstanding the Pandemic.[4] (See Exhibit 5 to the Complaint). Finally, the offer of proof made by plaintiffs as to what

---

[4] Courts have found that laws burdening far fewer (and a lower percentage of) voters violate *Anderson-Burdick*. "[E]ven one disenfranchised voter . . . is too many." *League of Women Voters of N.C.* v. *North Carolina*, 769 F.3d 224, 244 (4th Cir. 2014) (finding minority voters were entitled to a preliminary injunction on a bill eliminating same-day registration); *see also Ne. Ohio Coal. For Homeless* v. *Husted*, 696 F.3d 580 (6th Cir. 2012) (affirming order enjoining state from rejecting ballots cast in the wrong precinct due to poll worker error, where rejected ballots constituted less than .248% of votes cast); *Saucedo* v. *Gardner*, 335 F. Supp. 3d 202 (D.N.H. 2018) (enjoining state from enforcing law rejecting ballots due to signature mismatch, despite state's rejection of only .35% of all absentee ballots submitted).

the proposed expert witness, Héctor Luis Acevedo Pérez, would testify, defeat any allegations of state compelling interests.

## PLAINTIFFS WILL SUFFER IRREPARABLE HARM ABSENT INJUCTIVE RELIEF[5]

Puerto Rico's imposed deadline for voters' registration will prevent and affects Plaintiffs—and thousands of other voter citizens—from voting in the November elections. That will inevitably disenfranchise voters, like Plaintiffs, who have confronted serious obstacles to register or to update their information using the RE system. This is putting in jeopardy their right to exercise their fundamental right to vote. *Elrod* v. *Burns*, 427 U.S. 347, 373 (June 28, 1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."); *see also Asociación de Educación Privada de P.R.* v. *García Padilla*, 490 F.3d 1, 21 (1st Cir. 2007) (applying *Elrod* to irreparable harm component of permanent injunction analysis).

Indeed, courts routinely deem restrictions on fundamental voting rights irreparable injuries. *Jones* v. *Governor of Fla.*, 950 F.3d 795, 828 (11th Cir. 2020)[6] And of course, there "can be no injury more irreparable" than "serious, lasting illness or death." *Thakker* v. *Doll*, No. 1:20-CV-480, 2020 WL 1671563, at *4 (M.D. Pa. Mar. 31, 2020).

## THE BALANCE OF HARDSHIPS AND PUBLIC INTEREST SUPPORT INJUNCTIVE RELIEF

---

[5] **This is an action brought under 42 U.S.C. § 1983, *et seq*.** Defendants' actions described herein were taken under color of the laws of Puerto Rico. The First and Fourteenth Amendments of the U.S. Constitution protect the right to vote as a fundamental right. The First Amendment's guarantees of freedom of speech and association protect the right to vote and to participate in the political process. The right to vote is a fundamental constitutional right also protected by both the due process and equal protection clauses of the Fourteenth Amendment. *See, e.g.*, *Bush v. Gore*, 531 U.S. 98, 104-05 (2000); *Harper v. Va. State Bd. of Elections*, 383 U.S. 663, 670 (1996); *Anderson v. Celebrezze*, 460 U.S. 780, 786-87 (1983).

[6] ("The denial of the opportunity to cast a vote that a person may otherwise be entitled to cast—even once—is an irreparable harm."); *League of Women Voters of N.C.*, 769 F.3d at 247; *Obama for Am.* v. *Husted*, 697 F.3d 423, 436 (6th Cir. 2012); *Williams* v. *Salerno*, 792 F.2d 323, 326 (2d Cir. 1986). This is because "once the election occurs, there can be no do-over and no redress. The injury to these voters is real and completely irreparable if nothing is done to enjoin this law." *League of Women Voters of N.C.*, 769 F.3d at 247; *see also Fla. Democratic Party* v. *Scott*, 215 F. Supp. 3d 1250, 1258 (N.D. Fla. 2016) (noting that voting rights cases are not situations "where failing to grant the requested relief would be a mere inconvenience to Plaintiff and its members"—an election "isn't golf: there are no mulligans.").

The balance of the equities and public interest weighs heavily in favor of an injunction. As an initial matter, the administrative burden on Defendants to implement these protections for the general elections in November is slight. The Commission already permits registration for other categories of individuals eligible for absentee voting until October 2024. Thus, any administrative hurdles associated with allowing citizens to register until October 6, 2024, will likely be minimal and can be addressed during this process. *See, e.g.*, *People First of Ala.*, 2020 WL 3478093, at *6 (finding that proposed voting measure faced "minimal burdens because it generally requires the use of polling supplies and staff that already exist.")

None of these anticipated administrative burdens justify the deprivation of citizens' constitutional right to vote. Indeed, they are nothing more than what is already within the Commission's mandate. The Election Code requires that the voter be provided with the "most ample accessibility, without barriers" and that the electoral procedures be "based on the most ample participation and accessibility." *Pedro Pierluisi-Urrutia*, 2020 PRSC 82, at 17. See also Art. 3.1 of the 2020 Election Code.

Conversely, the harms to Plaintiffs and Puerto Rico's voters are great, irreparable, and imminent. Puerto Rico's current voting policies have forced Plaintiffs and thousands of other citizens to disenfranchisement. Courts—including the First Circuit—have found that this consequences are grave and warrant an injunction. *See, e.g.*, *Common Cause R.I.*, 2020 WL 4579367, at *2 (upholding District Court's approval of consent decree enjoining enforcement of Rhode Island's "two witness" voting requirement for mail-in voting).

The public's significant interest in ensuring its citizens their constitutional right to vote is best served by an injunction. *See League of Women Voters of N.C.*, 769 F.3d at 247–48 **("The public interest . . . favors permitting as many qualified voters to vote as possible.")**; *Obama for Am.*, 697 F.3d at 437 (finding that public interest "**favors permitting as many qualified voters to vote as**

**possible**"); *Libertarian Party of N.H.* v. *Sununu*, No. 20-CV-688-JL, 2020 WL 4340308, at *21 (D.N.H. July 28, 2020) ("[I]t is always in the public interest to prevent violation of a party's constitutional rights.") (quoting *ACLU Fund of Mich.* v. *Livingston Cnty.*, 796 F.3d 636, 649 (6th Cir. 2015)).

To the extent the CEE will incur the cost of processing more registration forms and counting more votes, those costs would be entirely consistent with fulfilling the statutory purpose of the Election Code 2020, to encourage the broadest possible voter participation in elections. Courts regularly hold that the balance of the equities weighs in favor of the right to vote when weighed against the administrative burdens of increasing access to the ballot. *See, e.g.*, *Ga. Coal. for People's Agenda, Inc. v. Kemp*, 347 F.Supp.3d 1251, 1268 (N.D. Ga. 2018) (holding increased administrative burden of "disseminating information" and "training poll managers. . . is minimal compared to the potential loss of a right to vote"); *United States v. Georgia*, 892 F.Supp.2d 1367, 1377 (N.D. Ga. 2012) ("[t]he potential hardships that Georgia might experience are minor when balanced against the right to vote, a right that is essential to an effective democracy."); *Fla. Democratic Party v. Detzner*, 2016 U.S. Dist. LEXIS 143620 at *26 (N.D. Fla. Oct. 16, 2016) ("Any potential hardship [to the state] imposed by providing the same opportunity. . . for [] voters pales in comparison to that imposed by unconstitutionally depriving those voters of their right to vote and to have their votes counted"]); *see also Yang v. Kellner*, 2020 U.S. Dist. LEXIS 79331 at *39 (S.D.N.Y. May 5, 2020) (holding that even where, unlike here, the injunction will impose great costs on the state, an injunction was proper because the state agreed to take on the costs when "it assumed the responsibility of regulating and holding the primary election").

**THEREFORE**, Plaintiffs respectfully request that the Court grant the **preliminary injunction** ordering Defendants to implement policies allowing voters to register until October 6, 2024 for the November 2024 general election by: 1. Extending the deadline for registration for the general elections

until October 6, 2024; 2. Updating all public education materials, including written, online, and on-air, to reflect the above deadline extension; 3. Ordering the Commonwealth of Puerto Rico to allocate all necessary budget and personnel to guaranty the right to vote of the people of Puerto Rico on November 5, 2024; and Deny the Motion to Dismiss filed by Defendants and such other relief as the Court may deem just and proper.

Dated: September 28, 2024.

Respectfully submitted,

*/S/Guillermo J. Ramos Luiña*
GUILLERMO J. RAMOS LUIÑA
USDC-PR 204007
UPR Station, PO Box 22763
San Juan, PR 00931
Tel. (787) 620-0527; Fax (787) 620-0039
gramlui@yahoo.com

*/S/ Fermín L. Arraiza Navas*
FERMÍN L. ARRAIZA NAVAS
USDC-PR 215705
*American Civil Liberties Union,*
 *Puerto Rico Chapter*
farraiza@aclu.org
Tel. (787) 966-3133

Lolimar Escudero Rodríguez, Esq.*
PR SCt, RUA: 14,692
LolimarER@aclu.org

Annette Martínez Orabona, Esq.
Executive Director
*American Civil Liberties Union*
 *Puerto Rico Chapter*
Union Plaza
416 Ponce de León Avenue, Suite 1105
San Juan, Puerto Rico 00918
Tel. (787) 753-9493
AMartinez-Orabona@aclu.org
*Of Counsel

Adriel I. Cepeda Derieux
*American Civil Liberties Union Foundation*
915 15th St., NW
Washington, DC 20005
(202) 456-0800
acepedaderieux@aclu.org

Sophia Lin Lakin
*American Civil Liberties Union Foundation*
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
slakin@aclu.org

*Pro Hac Vice*