## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

|  |  |
|---|---|
| MARINA ESPÍRITU, *et al.*<br><br>*Plaintiffs,*<br><br>v.<br><br>COMISIÓN ESTATAL DE ELECCIONES, *et al.*<br><br>*Defendants.* | Civil Action No. 3:24-cv-01446-MAJ |

## PLAINTIFFS' OBJECTIONS AND RESPONSE IN OPPOSITION TO MOTION FOR PARTIAL CONSIDERATION OF JUDGMENT AND MOTION REQUESTING ATTORNEY'S FEES AND COSTS

**TABLE OF CONTENTS**

I.  INTRODUCTION...........................................................................................................1

II.  ARGUMENT ..............................................................................................................2

    A.  Defendants have not shown they are entitled to the "extraordinary remedy" of
        reconsideration or altered judgment under Rule 59.....................................................3

    B.  An award of fees to Defendants under 42 U.S.C. § 1988 is inappropriate. .................4

        i.   The law strongly disfavors Defendants' request for fees. ...............................4

        ii.  Defendants cannot show why this case should be an "exception" to the
            rule disfavoring fee awards to defendants in 42 U.S.C. § 1983 actions............6

    C.  Costs should not be awarded because the Court did not "manifestly err" under
        Rule 59; in the alternative, requested costs should be reduced by $812.50...............13

III. CONCLUSION ............................................................................................................15

**TABLE OF AUTHORITIES**

**Cases**

*Aller v. New York Board of Elections*,
  586 F. Supp. 603 (S.D.N.Y. 1984) .........................................................................5

*American Encore v. Fontes*,
  No. 24-cv-01673, 2024 WL 4333202 (D. Ariz. Sept. 27, 2024) ...........................6

*Anderson v. Celebrezze*,
  460 U.S. 780 (1983) ...............................................................................................9

*Bercovitch v. Baldwin School, Inc.*,
  191 F.3d 8 (1st Cir. 1999) .......................................................................................5

*Bonilla v. Trebol Motors Corp.*,
  Civil No. 92-1795 (JP), 1997 WL 178844 (D.P.R. Mar. 27, 1997) .....................14

*Burke v. McDonald*,
  572 F.3d 51 (1st Cir. 2009) .....................................................................................4

*Casa Marie Hogar Geriátrico, Inc. v. Rivera-Santos*,
  38 F.3d 615 (1st Cir. 1994) .....................................................................................5

*Christiansburg Garment Co. v. E.E.O.C.*,
  434 U.S. 412 (1978) ....................................................................................*passim*

*City of Miami Fire Fighters' & Police Officers' Retirement Trust v. CVS Health Corp.*,
  46 F.4th 22 (1st Cir. 2022) ......................................................................................3

*Cloutier v. Town of Epping*,
  714 F.2d 1184 (1st Cir. 1983) ...............................................................................12

*Coates v. Bechtel*,
  811 F.2d 1045 (7th Cir. 1987) .................................................................................8

*Common Cause Rhode Island. v. Gorbea*,
  970 F.3d 11 (1st Cir. 2020) .....................................................................................9

*Cowen v. Georgia Secretary of State*,
  960 F.3d 1339 (11th Cir. 2020) .............................................................................11

*Crawford v. Marion County Election Board*,
    553 U.S. 181 (2008) .............................................................................................9

*Farmer v. Arabian American Oil Co.*,
    379 U.S. 227 (1964) ...........................................................................................14

*Florida State Conference of NAACP v. Lee*,
    566 F. Supp. 3d 1262 (N.D. Fla. 2021) .........................................................9, 10

*Fontanillas-Lopez v. Morell Bauzá Cartagena & Dapena, LLC*,
    832 F.3d 50 (1st Cir. 2016)...................................................................................1

*Foster v. Mydas Associates., Inc.*,
    943 F.2d 139 (1st Cir. 1991).................................................................................4

*Gonzalez-Camacho v. Banco Popular de Puerto Rico*,
    318 F. Supp. 3d 461 (D.P.R. 2018) ......................................................................3

*Grajales v. Puerto Rico Ports Authority*,
    No. 09-cv-2075, 2011 WL 13209589 (D.P.R. Apr. 15, 2011) ..............................4

*Griffith v. Mt. Carmel Medical Center*,
    157 F.R.D. 499 (D. Kan. 1994).............................................................................14

*Hermes v. Hein*,
    742 F.2d 350 (7th Cir. 1984) ................................................................................9

*Hernandez v. Valley View Hospital Ass'n*,
    No. 10-cv-00455, 2011 WL 6153698, (D. Colo. Dec. 9, 2011) ..........................15

*Home Loan Investment Co. v. St. Paul Mercury Insurance Co.*,
    78 F. Supp. 3d 1307 (D. Colo 2014) ...................................................................15

*Horne v. Flores*,
    557 U.S. 433 (2009) .............................................................................................8

*Hughes v. Rowe*,
    449 U.S. 5 (1980)..................................................................................................8

*In re Fidelity/Micron Securities Litigation*,
    167 F.3d 735 (1st Cir. 1999)...............................................................................13

*Interested Underwriters at Lloyd's v. M/T San Sebastian*,
    No. 1:03-cv-1778, 2007 WL 2507359 (N.D. Ga. Aug. 30, 2007)........................15

*Ira Green, Inc. v. Miitary. Sales & Services Co.*,
    775 F.3d 12 (1st Cir. 2014)......................................................................................13

*Irving v. Town of Camden*,
    2013 WL 7137518 (1st Cir. Apr. 17, 2013) ...........................................................7

*Israfil v. Woods*,
    No. 1:09-cv-468, 2011 WL 2551015 (S.D. Ohio Jan. 10, 2011)...........................13

*Jones v. Texas Tech University*,
    656 F.2d 1137 (5th Cir. 1981) ...............................................................................10

*Lamboy-Ortiz v. Ortiz-Vélez*,
    630 F.3d 228 (1st Cir. 2010).........................................................................1, 5, 6

*León-Rodríguez v. Corrections Department of Puerto Rico*,
    No. 08-cv-1584, 2010 WL 11679321 (D.P.R. June 29, 2010) ...............................4

*Libertarian Party of New Hampshire  v. Gardner*,
    638 F.3d 6 (1st Cir. 2011).......................................................................................10

*Marie v. Allied Home Mortgage Corp.*,
    402 F.3d 1 (1st Cir. 2005).........................................................................................3

*Markel American Insurance Co. v. Diaz-Santiago*,
    674 F.3d 21 (1st Cir. 2012).......................................................................................3

*Massachusetts v. EPA*,
    549 U.S. 497 (2007) ..................................................................................................8

*Namphy v. DeSantis*,
    493 F. Supp. 3d 1130 (N.D. Fla. 2020) .................................................................12

*Rodriguez v. Bonilla*,
    No. 02-cv-1949, 2005 WL 2291890 (D.P.R. Sept. 20, 2005) ...............................12

*Ruiz Rivera v. Pfizer Pharmaceuticals., LLC*,
    521 F.3d 76 (1st Cir. 2008).......................................................................................3

*Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*,
    547 U.S. 47 (2006) ....................................................................................................8

*Seattle Audubon Society v. Sutherland*,
    No. C06-1608, 2007 WL 1655152 (W.D. Wash. June 5, 2007)............................13

*Sixth District of African Methodist Episcopal Church v. Kemp*,
    574 F. Supp. 3d 1260 (N.D. Ga. 2021)...................................................................10

*Tang v. Rhode Island Department of Elderly Affairs*,
    163 F.3d 7, 15 (1st Cir. 1998)........................................................................4, 5, 6

*Taniguchi v. Kan Pacific Saipan, Ltd.*,
    566 U.S. 560 (2012) .......................................................................................14

*Thorpe v. Ancell*,
    367 F. App'x 914 (10th Cir. 2010) ...................................................................11

*Torres-Santiago v. Mun. of Adjuntas*,
    693 F.3d 230 (1st Cir. 2012)...........................................................................1, 5

*Village of Arlington Heights v. Metropolitan Housing Development Corp.*,
    429 U.S. 252 (1977) ........................................................................................8

*Washington Legal Foundation v. Massachusetts Bar Foundation*,
    993 F.2d 962 (1st Cir. 1993).............................................................................7

*White v. City of Ypsilanti*,
    129 F.3d 1266 (6th Cir. 1997) ..........................................................................4

**Statutes**

28 U.S.C. § 1920..................................................................................2, 14, 15

42 U.S.C. § 1983...........................................................................................6

42 U.S.C. § 1988.......................................................................................2, 7

Plaintiffs respectfully submit their objections and response in opposition to Defendants' Motion for Partial Reconsideration of Judgment and Motion Requesting Attorney's Fees and Costs. ECF No. 62 (the "Motion" or "Mot.").

## I.    INTRODUCTION

The strong presumption that defendants who prevail in civil-rights cases are *not* entitled to fees is well-settled.  With good reason: the presumption reflects Congress's "efforts . . . to promote the vigorous enforcement" of the civil-rights laws.  *Christiansburg Garment Co. v. E.E.O.C.*, 434 U.S. 412, 422 (1978).  Any other rule would "undercut[] that goal and chill[] civil rights litigation." *Lamboy-Ortiz v. Ortiz-Vélez*, 630 F.3d 228, 236 (1st Cir. 2010).  Not surprisingly, the standard for a defendant to get fees is a high one.  Prevailing defendants must show that a plaintiff litigated claims that were frivolous, unreasonable, or groundless.  The "standard is, by design, a difficult one to meet."  *Torres-Santiago v. Mun. of Adjuntas*, 693 F.3d 230, 234 (1st Cir. 2012).

Defendants ask the Court to award them fees but come nowhere close to meeting this demanding standard.  To start, this Court has already exercised its broad discretion to rule that each party would bear its own attorney's fees and costs.  *See* Judgment, ECF No. 54.  That makes Defendants' task even more daunting: they can only obtain fees if the Court's initial decision was a "manifest error" of law or fact.  *Fontanillas-Lopez v. Morell Bauzá Cartagena & Dapena, LLC*, 832 F.3d 50, 55 (1st Cir. 2016).  But the Court's judgment isn't error—let alone one that is clear or manifest.  Plaintiffs' case may have been unsuccessful, but it was neither frivolous nor unreasonable.  Defendants' arguments otherwise simply urge the Court to fall into the kind of dangerous "*post hoc*" and "hindsight logic" that would thwart Congress's goal to encourage private persons to prosecute the civil-rights laws.  *Christiansburg Garment Co.*, 434 U.S. 421-22.  The Court should deny Defendants' fee request in full.

Plaintiffs also object to certain asserted costs as not properly recoverable or reasonable under 28 U.S.C. § 1920 because Defendants cannot show the Court manifestly erred when it entered judgment denying costs. Even if Defendants could make that showing, Defendants' request should be reduced substantially, since more than 90 percent of their charged costs are for an interpreter that was never used.

## II.    ARGUMENT

Two very high obstacles bar Defendants' request for fees. *First*, because the Court has already exercised its discretion to rule that each party ought to bear its own fees, Defendants' request comes—as it must—in the form of a Rule 59 request for reconsideration. *See* Mot. 2-4. Defendants correctly explain that this is an "extraordinary remedy." *Id.* at 3. It's also one to which they are not entitled even by the standard they describe: Defendants don't present "newly discovered evidence," point to an "intervening change in the law," or so much as suggest the Court committed manifest error in denying fees to either party. *Id.*

*Second*, Defendants fail to rebut the strong presumption that defendants to civil-right litigation are *not* entitled to fees under 42 U.S.C. § 1988, even when they are the prevailing party. *See Christiansburg Garment Co.*, 434 U.S. at 418-19 ("[P]olicy considerations which support the award of fees to a prevailing plaintiff are not present in the case of a prevailing defendant."). On fees, Defendants must meet both standards to prevail; they clearly haven't met either.

Nor are Defendants entitled to billed costs. Again, the Court already entered judgment saying that the parties will bear their own costs, meaning Defendants must show that the Court manifestly erred in using its discretion this way. The Court did not err, and Defendants failed to show that it did, which alone is fatal to their request. However, if the Court entertains Defendants' request, it should reduce requested taxable costs by $812.50, which Defendants charge for an

interpreter whom Defendants retained for the preliminary-injunction hearing but never used. Courts routinely decline to award costs for inefficient, unused professional services. So even if this Court reconsiders its judgment on costs (which it shouldn't), it should reduce Defendants' request for that reason.

### A.    Defendants have not shown they are entitled to the "extraordinary remedy" of reconsideration or altered judgment under Rule 59.

Relief on "a motion for reconsideration is an extraordinary remedy which should be used sparingly." *City of Miami Fire Fighters' & Police Officers' Ret. Tr. v. CVS Health Corp.*, 46 F.4th 22, 36 (1st Cir. 2022) (cleaned up) (citations omitted). A Rule 59(e) motion is granted only when there is "newly discovered evidence," when the movant shows the Court committed "a manifest error of law or fact," or when there has been "a significant change in governing law." *Markel Am. Ins. Co. v. Diaz-Santiago*, 674 F.3d 21, 32-33 (1st Cir. 2012). "[I]t is very difficult to prevail on a Rule 59(e) motion." *Marie v. Allied Home Mortg. Corp.*, 402 F.3d 1, 7 n.2 (1st Cir. 2005). They are "typically denied." *Gonzalez-Camacho v. Banco Popular de P.R.*, 318 F. Supp. 3d 461, 511 (D.P.R. 2018) (internal quotation marks omitted).

Defendants correctly lay out all these principles, then leave them unaddressed. Their "Motion for Partial Reconsideration" expends more than a page explaining the correct and demanding legal standard. Mot. at 2-4. But then Defendants present no new evidence unavailable to the Court when it ruled that each party would bear their own fees and costs. Nor do they point to an intervening or novel change in the law. As such, the Motion may only succeed if this Court manifestly erred when it ruled that each party would bear their fees and costs. Defendants must convince this Court that its decision on the matter of fees and costs involved "an error not of reasoning but apprehension." *Ruiz Rivera v. Pfizer Pharms., LLC*, 521 F.3d 76, 82 (1st Cir. 2008). They do no such thing and would face great difficulty if they tried.

Establishing a "manifest error of law or fact" demands that defendants show "a substantial reason the court is in error." *León-Rodríguez v. Corr. Dep't of P.R.*, No. 08-cv-1584, 2010 WL 11679321, at *2 (D.P.R. June 29, 2010).  Here, no such reason exists.  Not only is the award of fees to prevailing defendants just available under extremely limited circumstances, which, as discussed below, are not present here, the decision whether to award fees to prevailing defendants is highly discretionary.  *See Burke v. McDonald*, 572 F.3d 51, 63 (1st Cir. 2009).  In fact, even if a district court concludes that a plaintiff's claim was frivolous such that an award of fees to defendants might be justified, a court may still "deny or reduce fee requests after considering all the nuances of a particular case." *Tang v. R.I. Dept. of Elderly Affs.*, 163 F.3d 7, 15 (1st Cir. 1998). Here, Defendants at best argue that they believe they should have received fees.  But they don't in any way explain why the Court's decision to assign each party their fees and costs was beyond its discretion.  Given that the Court had ample authority to deny fees—and, as detailed *infra*, the norm is that defendants in civil rights cases are *rarely* entitled to those—Defendants cannot meet the substantial burden inherent in a Rule 59 motion.  Their request for fees ought to fail.

**B.     An award of fees to Defendants under 42 U.S.C. § 1988 is inappropriate.**

**i.     *The law strongly disfavors Defendants' request for fees.***

An award of attorney's fees against a losing plaintiff in a civil rights action "is an extreme sanction that must be limited to egregious cases of conduct." *Grajales v. P.R. Ports Auth.*, No. 09-cv-2075, 2011 WL 13209589, at *2 n.3 (D.P.R. Apr. 15, 2011).  It is reserved for "'truly egregious' misconduct." *White v. City of Ypsilanti*, 129 F.3d 1266 (6th Cir. 1997) (unpublished table opinion) (citation omitted).

Defendants' request for fees thus runs against swaths of black-letter law that make this standard "difficult to meet." *Foster v. Mydas Assocs., Inc.*, 943 F.2d 139, 145 (1st Cir. 1991). Indeed, "fee-shifting in favor of a prevailing plaintiff is the rule, whereas fee-shifting in favor of a

4

prevailing defendant," as Defendants request, "is the exception." *Casa Marie Hogar Geriátrico, Inc. v. Rivera-Santos*, 38 F.3d 615, 618 (1st Cir. 1994). Here, Defendants may only recover fees based on a finding that the "plaintiff's action was frivolous, unreasonable, or without foundation." *Torres-Santiago*, 693 F.3d at 234 (citation omitted). And reasonableness is evaluated "at the time the complaint was filed," *id.* at 234-35, not assessed with "hindsight logic" on the suit's "ultimate failure," *id.*

Congress decided there are good reasons for this rule. "A successful defendant is in a different posture than a successful plaintiff." *Bercovitch v. Baldwin Sch., Inc.*, 191 F.3d 8, 10 (1st Cir. 1999). Had Plaintiffs succeeded, they'd have shown they could "vindicate[] an important congressional policy" and would have been "awarded fees 'against a violator of [federal] law.'" *Id.* (quoting *Christiansburg Garment Co.,* 434 U.S. at 418). But even as the prevailing party in federal civil-rights litigation, "[n]either is true of a successful defendant." *Bercovitch*, 191 F.3d at 10. Awarding "fees to prevailing defendants" simply "undercuts" the goal of "encourag[ing] the prosecution of legitimate civil rights claims," and "chills civil rights litigation." *Lamboy-Ortiz*, 630 F.3d at 236 (1st Cir. 2010).[1] Given this concern's gravity, the First Circuit has reversed fee awards to defendants in civil-rights cases—finding them to be an abuse of district courts' discretion—even when Plaintiffs' attorneys' conduct was so reproachable, "vexatious and unreasonable" as to merit sanctions. *Id.* at 241-46. The First Circuit hasn't minced words: "decisions to grant defendants their fees are, and should be, rare." *Tang*, 163 F.3d at 13.

---

[1] *See also Aller v. N.Y. Bd. of Elections*, 586 F. Supp. 603, 605 (S.D.N.Y. 1984) (noting the "more stringent standard applicable to defendants is intended to ensure that plaintiffs with uncertain but arguably meritorious claims are not altogether deterred from initiating litigation by the threat of incurring onerous legal feels should their claims fail").

ii.    **_Defendants cannot show why this case should be an "exception" to the rule disfavoring fee awards to defendants in 42 U.S.C. § 1983 actions._**

Defendants don't show any reason why this case should be such a "rare" exception to these principles. *Id.* Plaintiffs' claims to vindicate their civil rights under the U.S. Constitution and 42 U.S.C. § 1983, while unsuccessful, were in no way frivolous or unreasonable. The Court should deny their request in full for four principal reasons.

***First***, a 42 U.S.C. § 1983 action's "reasonableness" on the matter of defendant fees is evaluated "at the time the complaint was filed." *Lamboy-Ortiz*, 630 F.3d at 237. Not with the benefit of hindsight. On that score, Defendants' own Motion recognizes that Plaintiffs' Complaint stood on solid ground when filed on September 22, 2024. *See* Compl., ECF No. 1.

Namely, Defendants explain that the substitution of original plaintiffs Dante Vélez-Iriarte and Francisco Concepción-Márquez by means of an amended complaint, filed September 24, "was the *direct result* of . . . their receiving notice of their registration's approval from the CEE." Mot. at 9 n.3 (emphasis added). In the original Complaint, filed September 22, Messrs.. Vélez-Iriarte and Concepción-Márquez alleged injuries due to still being listed as inactive or "pending approval" in Defendants' eRE registration system after the registration cutoff despite having correctly navigated the system's procedures before the registration deadline. Compl., ECF No 1 ¶¶ 20-21. Thus, at the time of the Complaint's filing, their alleged burden was the disenfranchisement that would follow from administrative inaction if they remained unregistered come Election Day. And they alleged that administrative mishaps had left both them and "more than 81,000 applicants still waiting for confirmation . . . that they ha[d] been successfully registered." *Id.* ¶ 3.

Disenfranchisement is a "severe burden," as courts have "routinely recognized." *Am. Encore v. Fontes*, No. 24-cv-01673, 2024 WL 4333202, at *15 (D. Ariz. Sept. 27, 2024). And, in the case of these two plaintiffs, Defendants acknowledge that burden was "direct[ly]" remedied

once the CEE approved their pending registrations.  Mot. at 9 n.3.  Separately, while it did not prove enough for Plaintiffs to prevail on a preliminary-injunction standard, evidence adduced at the preliminary-injunction hearing confirmed that as of Puerto Rico's registration deadline, there were "91,053 electoral transactions awaiting" Defendants' processing.  Prelim. Inj. Hr. Tr. 41:2-24.  That is, of course, even greater than the backlog of which Plaintiffs initially complained.

This shows that Plaintiffs' Complaint surely alleged *colorable* claims when filed—that is, the time from when courts consider whether a case is frivolous for purposes of 42 U.S.C. § 1988. *See Irving v. Town of Camden*, 2013 WL 7137518, at *1 (1st Cir. Apr. 17, 2013).  Put simply: Defendants' actions "mooted out," two original plaintiffs.[2]  These two plaintiffs' claims—while moot at the time of the Court's preliminary-injunction hearing—were viable and colorable at the time Plaintiffs' filed the Complaint, given Messrs.. Vélez and Concepción were unregistered when they sued. *See Christiansburg Garment Co.*, 434 U.S. at 422 (explaining that reasonableness must be evaluated at the time the case begins because "the course of litigation is rarely predictable").  Defendants then completed a third plaintiff's registration, Ms. Iris Delia Torres-López, on the eve of the preliminary-injunction hearing, making her case moot as well.[3]

Under the axiomatic "one-good plaintiff" rule alone, thus, considered at the time the action was filed, Defendants' frivolity argument fails. *See, e.g.*, *Wash. Legal Found. v. Mass. Bar Found.*, 993 F.2d 962, 972 (1st Cir. 1993) (citation omitted) ("Because we find that at least two of the plaintiffs . . . have standing to maintain each claim, we need not address the standing of all

---

[2] *See* Exh. 1 (E-mail from eRE, to Dante B. Vélez-Iriarte, re: Solicitud de Inscripción/Enrollment Request (Sept. 26, 2024); Exh. 2 (E-mail from eRE to Francisco Concepción, re: Cambios del Record Electoral Aprobado/Request Changes of Electoral Record Approved (Sept. 25, 2024).

[3] *See* Prelim. Inj. Hr. Tr. 125:3-10 ("Mr. Ramos-Luiña: . . . The reason why Plaintiff Iris Delia Torres-Lopez did not appear, last night she received notification that she had been registered.  So her case became moot. . . . The Court: Very well.").

plaintiffs as to each claim.").  At least three of the four original plaintiffs' disputes against Defendants were only resolved through Defendants' quick actions to complete their registration before the preliminary-injunction hearing.  Plaintiffs' case was far from frivolous at the onset.[4]

**Second**, Defendants' remaining arguments ignore the principle that "the fact that a plaintiff may ultimately lose his case is not in itself a sufficient justification for the assessment of fees." *Hughes v. Rowe*, 449 U.S. 5, 14 (1980).  That is true, even where, as here, civil-rights claims fail to make it past the pleadings.  *See Coates v. Bechtel*, 811 F.2d 1045, 1050 (7th Cir. 1987) ("[A] plaintiff's failure to adduce factual evidence to survive . . . a motion to dismiss . . . does not alone render the action frivolous justifying . . . fees to the defendant.").  Indeed, "[e]ven when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit."  *Christiansburg Garment Co.*, 434 U.S. at 422.  That is precisely the case here, where Plaintiffs' original complaint featured individual plaintiffs who only dropped from the case when Defendants ensured they could successfully register, but were not on Puerto Rico's voter rolls at the action's onset.  *See, e.g.*, Prelim. Inj. Hr. Tr. 22:16-19 ("[D]ue to the fact that the Defendants have been very diligently attending the petitions from our clients . . . some of their cases have started to become moot.").

**Third**, even despite state-offered "alternatives" to registration, Plaintiffs presented a colorable, non-frivolous case for relief.  Defendants offer no good reason why "the remaining plaintiffs" would—let alone *should*—have "voluntarily dismiss[ed] their causes of action" once

---

[4] Because these plaintiffs had viable and colorable claims against Defendants at the time they filed the action, the "one good plaintiff rule" in fact here applies to make all the plaintiffs' claims against Defendants nonfrivolous.  *See Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264 & n.4 (1977) ("[W]e have at least one individual plaintiff who has demonstrated standing . . . . Because of the presence of this plaintiff, we need not consider whether the other individual . . . plaintiffs have standing to maintain the suit."); *see also Horne v. Flores*, 557 U.S. 433, 446 (2009); *Massachusetts v. EPA*, 549 U.S. 497, 498 (2007); *Rumsfeld v. F. for Acad. & Institutional Rts., Inc.*, 547 U.S. 47, 52 n.2 (2006).

Defendants removed two plaintiffs from the case by successfully completing their registrations. Mot. at 9 n.3. Even if their case proved unsuccessful, it was not frivolous for them to litigate their claims. *Cf. Hermes v. Hein*, 742 F.2d 350, 356 (7th Cir. 1984) ("[A]t the time suit is brought, a plaintiff seldom can be sure of ultimate success."). For example, the Court concluded that Ms. Marina Espíritu's and Mr. Victor Altieri's alleged burdens were not sufficient to warrant relief. Op. & Order, ECF No. 53 at 19-20. But that result does not, by itself, suggest frivolity. Plaintiffs sued, in part, to vindicate their rights to vote under the Fourteenth Amendment. And under the relevant test, "[*h*]*owever slight* th[e] burden" that a "state law imposes on . . . an individual voter," "it must be justified by relevant and legitimate state interests 'sufficiently weighty to justify the limitation.'" *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 191 (2008) (emphasis added) (citation omitted).[5] Even if they didn't ultimately carry the day, Plaintiffs alleged legitimate and colorable burdens that afforded them a day in court.

Take Ms. Espíritu's case. Again, this Court could have—as it did—concluded that she ought to have overcome her limited means of transportation and mobility issues to avail herself of "state process[es] in place" once the eRE system denied her reactivation petition. Op. & Order at 20. But in other contexts, courts have credited the specific burdens that states' election policies may impose on limited-mobility voters, even in the face of existing alternate state processes. *See, e.g.*, *Fla. State Conf. of NAACP v. Lee*, 566 F. Supp. 3d 1262, 1284-85 (N.D. Fla. 2021) (applying *Anderson-Burdick* "sliding scale" to statute restricting use of ballot "drop boxes" to cast ballots, in part, because of the burden it would impose on voters with disabilities and limited mobility). Indeed, the *Anderson-Burdick* framework "requires the Court to evaluate the type of burden

---

[5] *See also Common Cause R.I. v. Gorbea*, 970 F.3d 11, 14 (1st Cir. 2020) ("[W]e weigh the 'character and magnitude of the asserted injury to' the voters' rights against the 'precise interests put forward by the State as justifications for the burden imposed.'" (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983))).

imposed by the challenged provisions and apply the corresponding level of review." *Sixth Dist. of Afr. Methodist Episcopal Church v. Kemp*, 574 F. Supp. 3d 1260, 1278 (N.D. Ga. 2021). So it's commonly difficult to determine whether a claim like the one plaintiffs brought fails at the outset. *Cf. Fla. State Conf. of NAACP*, 566 F. Supp. 3d at 1286 (noting *Anderson-Burdick* is "particularly difficult to apply at the motion to dismiss stage"). Here, the Court did its work and found Plaintiffs' evidentiary allegations wanting. But—as usual—the fact that a "claim was ultimately [un]successful," doesn't make it "so lacking in arguable merit as to be groundless or without foundation." *Jones v. Tex. Tech Univ.*, 656 F.2d 1137, 1145 (5th Cir. 1981). Ms. Espíritu's claim was not frivolous at the time of the Complaint's filing.

For this reason, Mr. Altieri's case was not frivolous, either. This Court may have concluded that his alleged burdens—*e.g.*, having to resubmit a replacement utility bill, not being given an actual phone number to contact the CEE, completing his registration before the deadline cut off his ability to do so—were not sufficient to merit preliminary-injunctive relief. *See* Op. & Order at 19-20. But *Anderson-Burdick* called upon the Court to consider those burdens, as it correctly did, by means of a "sliding scale approach." *Libertarian Party of N.H. v. Gardner*, 638 F.3d 6, 14 (1st Cir. 2011); *see* Op. & Order at 23. And at some point, given additional obstacles or lesser government "burden," the scales would clearly "tip" in Mr. Altieri's favor. That they didn't do so here can only be assessed with the benefit of hindsight: clearly, Mr. Altieri faced *some* burdens, they just weren't enough for him to win on a preliminary-injunction posture that accounted for the balance of hardships among the parties—a particularly contested standard in voting-rights cases. *See, e.g.*, *Robinson v. Callais*, 144 S. Ct. 1171 (Mem.) (Jackson, J., dissenting from grant of applications for stay) (noting unsettled scope of *Purcell* "principle"); *Merrill v. Milligan*, 142 S. Ct. 879, 881 (2022) (Kavanaugh, J., concurring) (noting *Purcell* principle isn't

"absolute" but informs "stay principles for election context"). And the Court concluded after considering the evidence presented at the preliminary-injunction hearing that his alleged harm was "self-inflicted." Op. & Order at 25-26. So the end result just makes his case unsuccessful, not frivolous. *Cf. Cowen v. Ga. Sec'y of State*, 960 F.3d 1339, 1346 (11th Cir. 2020) (*Anderson-Burdick* "emphasizes [] relevance of context and specific circumstances").

**Fourth,** Plaintiffs' legal theory itself was in no way frivolous—*i.e.*, "indisputably meritless." *Thorpe v. Ancell*, 367 F. App'x 914, 919-20 (10th Cir. 2010). This Court distinguished the facts that led Plaintiffs' suit from those underlying other actions where "*force majeure* level events disrupted local voter registration processes, rendering voter registration deadlines [] unfair and unworkable." Op. & Order at 17-18. That finding was well within the Court's discretion. But Plaintiffs' efforts to challenge the way in which the "flaws" in Puerto Rico's "implementation of new registration systems" to which the Court alluded, *id.* at 28—and to which witnesses testified at the preliminary-hearing[6]—impacted their civil rights were hardly frivolous or vexatious. Rather, they were a good-faith attempt to analogize Plaintiffs' experience as Puerto Rico voters not only to these "*force majeure*" cases, but also to ones where courts have reviewed "man-made" exigent circumstances—namely, crashed registration websites—that have affected voter registration. While the theory didn't win the day for Plaintiffs, circumstances short of "force majeure"-level events posing obstacles to voter registration have been litigated as colorable, non-frivolous claims.

In one such case, a federal district court considered the burdens a crashed registration website placed on voters grave enough to order the state of Virginia to reopen its deadline by a week. *See* Order, *New Va. Majority Educ. Fund v. Va. Dep't of Elections*, No. 16-cv-01319, (E.D.

---

[6] *See, e.g.*, Prelim. Inj. Hr. Tr. 63:25-65:19 (CEE Secretary discussing power outages affecting CEE headquarters for "several days" and affecting "services provided"); *id.* 79:17-80:13 (CEE Secretary discussing ten-month delay in launching of Puerto Rico electronic registration platform).

Va. Oct. 20, 2016), ECF No. 10.  And in another, a Florida district court held that a "malfunction" in the state's registration website was "certainly a substantial burden limiting the right to vote," before concluding that the plaintiffs lost on the equities.  *Namphy v. DeSantis*, 493 F. Supp. 3d 1130, 1144 (N.D. Fla. 2020).  Plaintiffs' papers pointed to these cases as an example of events where "flaws" in the "implementation of [] registration systems," Op. & Order at 28, proved severe enough to warrant court intervention, *see* Opp. to Mot. to Dismiss, ECF No. 52 at 5.

After considering "the evidence presented by Plaintiffs at the preliminary injunction hearing," Op. & Order at 27, this Court, of course, reached a different conclusion, and Plaintiffs didn't prevail.  But this was only—as the Court described—the result of evidentiary deficiencies, not frivolousness.  *Id.*  That is, the "brunt of Plaintiffs' instant case . . . caved in, not because of the frivolity of their allegations, but because of their failure to present evidentiary support and meet their burden . . . ."  *Rodriguez v. Bonilla*, No. 02-cv-1949, 2005 WL 2291890, at *1 (D.P.R. Sept. 20, 2005).  This does not overcome the robust presumption against § 1988 defendant fee awards.

* * *

At bottom, Defendants mistake their own success for Plaintiffs' frivolity, when the law warns precisely against doing so.  *See Christiansburg Garment Co.*, 434 U.S. at 421-22 (instructing "district court[s] [to] resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable"); *cf. also Cloutier v. Town of Epping*, 714 F.2d 1184, 1193 (1st Cir. 1983) (concluding court "cannot say plaintiffs' claims, when brought, were so patently frivolous as to have required the . . . court to award fees" to defendants notwithstanding claims were "lacking in merit.").  Nor does the Court's ruling support their argument.  This Court ultimately weighed and measured Plaintiffs' allegations and evidentiary presentation in an open-court hearing; it just

concluded that those didn't sufficiently "support" "claims of voter disenfranchisement." Op. & Order at 27. "The evidence before th[e] Court," it explained, "d[id] not rise to the level of systemic failure . . . ." *Id.* at 28.

That is simply not the stuff fee-shifting to defendants in civil-rights cases is made of. Engaging in the kind of "hindsight logic" that Defendants urge would do exactly what the Supreme Court teaches against in the context of federal civil-rights law: "discourage all but the most airtight [civil rights] claims, for seldom can a prospective plaintiff be sure of ultimate success." [7] *Christiansburg Garment Co.*, 434 U.S. at 422.

### C. Costs should not be awarded because the Court did not "manifestly err" under Rule 59; in the alternative, requested costs should be reduced by $812.50.

For the reasons related to Rule 59 explained *supra*, the Court should also deny Defendants bill of costs. Defendants present no argument that would entitle them to the "extraordinary remedy" of reconsideration from the Court's final judgment. *Ira Green, Inc. v. Mil. Sales & Servs. Co.*, 775 F.3d 12, 28 (1st Cir. 2014). The Court "enjoy[s] wide latitude" as to its award of costs. *In re Fid./Micron Sec. Litig.*, 167 F.3d 735, 736 (1st Cir. 1999). Defendants don't so much as suggest that the Court's decision not to levy costs is manifest error.

---

[7] Defendants' overwrought description of being "ambushed" by Plaintiffs' proffer of an expert witness in a preliminary-injunction hearing misunderstands the law and does not suggest frivolity. Mot. at 9 n.4. Plaintiffs recognize that the Court was within its discretion to preclude Plaintiffs' expert's testimony. But Rule 26(a)(2)(C) of the Federal Rules of Civil Procedure applies only to trials, and didn't require Plaintiffs to disclose in advance that they planned on having an expert testify on their behalf at the hearing. *Seattle Audubon Soc. v. Sutherland*, No. C06-1608, 2007 WL 1655152, at *1 (W.D. Wash. June 5, 2007) (denying request to strike expert testimony at preliminary-injunction hearing); *id.* (noting rules "set[] the time frame in which disclosures must be made *before trial* [they are] inapplicable here, where the parties are not preparing for a trial, but for a preliminary injunction hearing"); *cf. also Israfil v. Woods*, No. 1:09-cv-468, 2011 WL 2551015, at *5 (S.D. Ohio Jan. 10, 2011) (noting expert disclosure rules were inapplicable "at the hearing [] conducted on Plaintiff's motion for a temporary restraining order/preliminary injunction").

In any event, if the Court were to reconsider its own judgment as to costs, it should at best award a sum of $72 of Defendants' charged costs: specifically, for docket fees and "exemplification and [] costs of making copies." *See* Bill of Costs, ECF No. 63 at 1.

Federal Rule of Civil Procedure 54(d)(1) provides that certain costs other than attorneys' fees are allowed to the prevailing party unless the court directs otherwise. 28 U.S.C. § 1920 sets forth the costs that may be taxed under this rule. They are "limited to relatively minor, incidental expenses as is evident from § 1920," and their scope is narrow. *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 573 (2012). The prevailing party bears the burden of proving that the expenses sought to be taxed properly fall within § 1920's categories. *Bonilla v. Trebol Motors Corp*., Civil No. 92-1795 (JP), 1997 WL 178844, *14 (D.P.R. Mar. 27, 1997). The amount of statutorily authorized costs "must be carefully scrutinized" to ensure that it is reasonable." *Griffith v. Mt. Carmel Med. Ctr.,* 157 F.R.D. 499, 502 (D. Kan. 1994) (citing *Farmer v. Arabian Am. Oil Co.*, 379 U.S. 227, 235 (1964)).

Carefully scrutinizing Defendant's bill of costs, it is evident that Defendants request for $812.50 in fees related to the compensation of an interpreter who was never used. *See* ECF No. 63-2. Specifically, Defendants produce an invoice for 6.5 hours for the services of Ms. Sandra Meléndez on September 27, 2024, the date on which the Court held a preliminary-injunction hearing. *Id.* But Ms. Meléndez's services were not used during the hearing. Instead, Ms. Pura Reyes, an interpreter working with the Plaintiffs, provided interpretation services during the hearing. *See* Exh. 3 (Letter from Pura Reyes Gilestra to Atty. Fermín Arraiza (Oct. 29, 2024)). Defendants never raised the fact that they planned on retaining a second interpreter with Plaintiffs, and Plaintiffs first learned of Ms. Meléndez's involvement from Defendants' bill of costs.

14

Courts often deny requests to award costs for charges for interpreters retained for court appearances who are not eventually used—particularly when their engagement is inefficient because another party secured another professional's services.  *See Interested Underwriters at Lloyd's v. M/T San Sebastian*, No. 1:03-cv-1778, 2007 WL 2507359, at *1 (N.D. Ga. Aug. 30, 2007) (denying Defendants' costs for "standby interpreter" where "[i]nterpretation services were provided at trial by an interpreter retained, and paid for, by the Plaintiff" and court would not "award costs caused by this inefficiency and . . . for services that were not used"); *see also Hernandez v. Valley View Hosp. Ass'n*, No. 10-cv-00455, 2011 WL 6153698, at *1 (D. Colo. Dec. 9, 2011) (reducing interpreter costs "associated with depositions not used in connection with defendants' successful summary judgment motion"); *cf. also Home Loan Inv. Co. v. St. Paul Mercury Ins. Co.*, 78 F. Supp. 3d 1307, 1321-22 (D. Colo 2014) ("witness fees for expert witnesses that do not testify in court are not an allowable cost under 28 U.S.C. § 1920").

Defendant should not be awarded costs associated with an interpreter that was both redundant and ultimately unnecessary.  Accordingly, if the Court exercises its discretion to award costs, it should only do so in the amount of $72.

## III.   CONCLUSION

Defendants ignore and fail to meet the high standards contained in Rule 59 for motions for reconsideration.  They have separately failed to show that Plaintiffs' claims were frivolous, vexatious, or groundless, or that the Court committed an error of law in its initial exercise of its discretion in ruling that the parties ought to bear their own costs and fees.  They would have to demonstrate both for the Court to give them the relief they seek and do neither.  Their claim for fees and costs should fail.  Lastly, any award of costs to Defendants ought to be reduced by $812.50 charged for an interpreter that was never used during the preliminary-injunction hearing.

Respectfully submitted, in San Juan, Puerto Rico, this 30th day of October 2024.

*/S/Guillermo J. Ramos Luiña*
*GUILLERMO J. RAMOS LUIÑA*
USDC-PR 204007
UPR Station, PO Box 22763
San Juan, PR 00931
Tel. (787) 620-0527
Fax (787) 620-0039
gramlui@yahoo.com

*/S/ Fermín L. Arraiza Navas*
FERMÍN L. ARRAIZA NAVAS
USDC-PR 215705
*American Civil Liberties Union,*
  *Puerto Rico Chapter*
farraiza@aclu.org
Tel. (787) 966-3133

Lolimar Escudero Rodríguez, Esq.*
PR SCt, RUA: 14,692
*American Civil Liberties Union,*
  *Puerto Rico Chapter*
LolimarER@aclu.org

Annette Martínez Orabona, Esq.
Executive Director
*American Civil Liberties Union*
  *Puerto Rico Chapter*
Union Plaza
416 Ponce de León Avenue, Suite 1105
San Juan, Puerto Rico 00918
Tel. (787) 753-9493
AMartinez-Orabona@aclu.org

*Of Counsel

Adriel I. Cepeda Derieux
*American Civil Liberties Union Foundation*
915 15th St., NW
Washington, DC 20005
(202) 456-0800
acepedaderieux@aclu.org

Sophia Lin Lakin
*American Civil Liberties Union Foundation*
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
slakin@aclu.org

*Pro Hac Vice*

I HEREBY CERTIFY: That on this same date I have filed the foregoing document through ECF/CM system which will give notice of this filing to all parties in the instant case.

In San Juan, Puerto Rico, this 30th day of October 2024.

S/*Fermín L. Arraiza Navas*
FERMÍN L. ARRAIZA NAVAS
USDC-PR 215705

16